ESTATE OF JOSEPH LEDER, DECEASED, JEANNE LEDER, EXECUTRIX, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 31194-85.          Filed August 5, 1987.

*Randall D. Mock* and *Steven P. Cole*, for the petitioner.
*Thomas J. Miller*, for the respondent.

OPINION

WELLS, *Judge:*[*] Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $253,547.77. After concessions, the sole issue for decision is whether proceeds from a life insurance policy, purchased by the insured's spouse within 3 years of the insured's death, are includable in the insured's gross estate where the policy premiums were paid by preauthorized withdrawals from the account of a corporation wholly owned by the insured.

This case was submitted fully stipulated pursuant to Rule 122.[1] The stipulation of facts and exhibits thereto are incorporated herein by reference.

Petitioner is the Estate of Joseph Leder, represented by Jeanne Leder, executrix of the estate and widow of Joseph Leder. (Joseph Leder is hereinafter referred to as the decedent.) At the time she filed the petition, Jeanne Leder resided in Oklahoma City, Oklahoma.

The decedent died on May 31, 1983. At the time of decedent's death, he was insured under life insurance policy number 6438531, issued by the TransAmerica Occidental Life Insurance Co. on January 28, 1981 (the policy). The application for the policy was signed by Jeanne Leder, as owner, and the decedent, as the insured. The policy initially reflected Jeanne Leder as sole owner and beneficiary. The face amount of the policy was $1 million.

The premiums for the policy were $3,879.08 per month which were paid by preauthorized withdrawals from the account of Leder Enterprises,[2] a corporation wholly owned by the decedent. All of the premiums were paid less than 3

*By order of the Chief Judge, this case was assigned to Judge Wells for decision and opinion.

[1]Unless otherwise indicated all section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Under the category "Stocks and Bonds" owned by the decedent, the estate tax return lists only "Leader Enterprises, Inc." There is no mention of "Leder Enterprises;" however, we shall refer to the corporation as Leder Enterprises because both parties designate it as such in their briefs and the stipulation of facts.

years before the decedent's death. The premium payments were treated as loans made by Leder Enterprises to the decedent. Neither Leder Enterprises nor the decedent received any consideration from Jeanne Leder in return for the premium payments on the policy.

On February 15, 1983, Jeanne Leder, as owner of the policy, transferred the policy to herself as trustee of an inter vivos trust dated February 15, 1983.[3] The trust agreement, titled "Irrevocable Trust Agreement of the Jeanne Leder Life Insurance Trust," provides, inter alia, that upon receipt of the trust corpus, the trustee shall divide the assets of the trust into four equal shares, each as an equal trust, these equal shares to be for the benefit of Jeanne Leder, Jil Ida Leder Larwig, Joseph Jak Leder, and Ethel Anna Leder. The three latter beneficiaries are the children of the decedent and Jeanne Leder. No further assignments of the policy were made.

Upon the death of the decedent, the proceeds of the policy, totaling $971,526.49, were distributed outright, one-fourth to each of the beneficiaries. No part of the $971,526.49 was included in the decedent's gross estate on the Federal estate tax return filed for the estate of the decedent. In the notice of deficiency, respondent determined that the proceeds of the policy were properly includable in the gross estate.

Respondent argues that the proceeds from the policy are includable in the decedent's gross estate pursuant to section 2035.[4] Petitioner asserts that (1) section 2035 applies only if

---

[3]The trust agreement shows Jeanne Leder as the grantor of the trust.

[4]SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) EXCEPTIONS.— Subsection (a) shall not apply—

(1) to any bona fide sale for an adequate and full consideration in money or money's worth, and

(2) to any gift to a donee made during a calendar year if the decedent was not required by section 6019 (other than by reason of section 6019(2)) to file any gift tax return for such year with respect to such donee. Paragraph (2) shall not apply to any transfer with respect to a life insurance policy.

\* \* \* \* \* \* \*

(d) DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

the insurance proceeds are includable in the gross estate pursuant to section 2042;[5] (2) the decedent never possessed any of the incidents of ownership in the policy, thus rendering section 2042 inapplicable to the proceeds; and consequently, (3) the proceeds are not includable in the value of the gross estate pursuant to section 2035 because there was not a transfer of incidents of ownership includable in the estate under section 2042. In the alternative, petitioner argues that even if a determination that the proceeds are not includable pursuant to section 2042 is not dispositive of the issue for purposes of section 2035, the policy proceeds are not includable under section 2035 because the decedent controlled no aspect of the transaction and did not transfer the policy within the meaning of section 2035(a).

We hold that the proceeds from the policy are not includable in the gross estate where the decedent did not possess at the time of his death, or at any time in the 3 years preceding his death, any of the incidents of ownership in the policy because (1) section 2042 is not applicable; (2) the section 2035(d)(2) exception to section 2035(d)(1) is not applicable because the conditions of section 2042 (or any of the other sections cited in section 2035(d)(2)) are never met; and (3) section 2035(d)(1) overrides section 2035(a). In so holding, we do not reach the issue of whether there was a transfer within the meaning of section 2035(a).

## *Section 2035*

Section 2035(a) generally requires inclusion in a decedent's gross estate of the value of property, any interest in which was transferred by him within 3 years of death for less than adequate and full consideration. The Economic

---

(2) EXCEPTIONS FOR CERTAIN TRANSFERS.—Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.

[5]SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) RECEIVABLE BY THE EXECUTOR —To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 424, 95 Stat. 172, 317, added Code section 2035(d), which applies to estates of decedents dying after 1981. Section 2035(d) nullifies section 2035(a) (hereinafter sometimes referred to as the 3-year rule), except in the case of certain transfers described in section 2035(d)(2) still subject to inclusion under the 3-year rule.

Section 2035(a) itself is unchanged since 1976. Section 2035(d) is simply an added sieve through which transactions must pass before the transfer may even be tested under the 3-year rule. Although section 2035(d)(1) generally repeals the 3-year rule, perforations in the sieve are found in section 2035(d)(2)[6] which allow the 3-year rule to be applied to a transfer of an interest in property which either (1) is included in the value of the gross estate under section 2042,[7] or (2) would have been included under section 2042 had such an interest been retained by the decedent.

The decedent died after 1981, so section 2035(d) applies to his estate. This is a case of first impression insofar that no other reported decision has considered the impact of section 2035(d) on the 3-year rule; all other cases that discuss section 2035 concern decedents dying before section 2035(d) went into effect.

In order to apply section 2035 to the facts of the instant case, we first must interpret section 2035(d)(2). Unless the proceeds from the life insurance policy come under the provisions of section 2035(d)(2), section 2035(d)(1) will apply to the proceeds. If section 2035(d)(1) does apply, it mandates that the 3-year rule shall not apply to the decedent's estate, since he died after December 31, 1981. If, on the other hand, the policy proceeds do come under the provisions of section 2035(d)(2), that paragraph overrides section 2035(d)(1) and allows the proceeds to be tested for includability under the 3-year rule.

Petitioner asserts that unless the decedent possessed some incident of ownership of the policy at some time during the 3 years before his death, there was nothing for

[6]Sec. 2035(d)(3) and (4) also provides exceptions whereby sec. 2035(d)(1) does not apply and the 3-year rule is still in effect; however, none of the exceptions in those paragraphs applies to the instant case.

[7]The statute also contemplates similar treatment for transfers includable under secs. 2036, 2037, or 2038, none of which applies here.

the decedent to transfer, section 2035(d)(2) is inapplicable, and section 2035(d)(1) precludes application of the 3-year rule to any proceeds from the policy. Respondent counters that petitioner's reading of the term "transfer" is highly technical and that the term "transfer" as used in section 2035 refers to any transfer whether direct or indirect. Respondent's argument may be appropriate in interpreting the meaning of section 2035(a); however, respondent overlooks the language of section 2035(d), which must be satisfied *before* any consideration may be given to section 2035(a).

There is no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes; where these words are sufficient in and of themselves to determine the purpose of the legislation, we should follow their plain meaning. *United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940). The plain language of section 2035(d)(2) requires as a threshold issue that there be an interest in property under the terms of the sections it lists (e.g., sec. 2042). It requires that the decedent transfer an interest in property included in the gross estate or an interest that would have been included if the decedent had retained such an interest. The decedent must have had at some time such an interest in property, or else there is nothing for him to retain or transfer, and section 2035(d)(2) cannot apply.[8] If section 2035(d)(2) does not apply and no other exception to section 2035(d)(1) applies, section 2035(d)(1) acts to foreclose any consideration of includability in the gross estate under section 2035(a).

Respondent, however, cites language from the legislative history accompanying the enactment of section 2035(d) as evidence that Congress "clearly" intended in 1981 that the 3-year rule would continue to apply to gifts of life insurance regardless of section 2035(d)(1). This Court requires unequivocal evidence of legislative purpose before we construe a

[8] Apparently, sec. 2035(d)(2) could apply to any interest in property ever held by the decedent if the interest were of the type includable under the sections cited therein. When sec. 2035(d)(2) is read in conjunction with the 3-year limit in sec. 2035(a), however, the two provisions combine to include in the gross estate only those property interests which are (1) includable in the decedent's gross estate under the terms of sec. 2042 (in the case of life insurance) and (2) transferred by the decedent within 3 years of his death.

statute so as to override the plain meaning of the words used therein. *Huntsberry v. Commissioner*, 83 T.C. 742, 747-748 (1984).

Respondent first cites the Senate Finance Committee report, S. Rept. 97-144 (1981), 1981-2 C.B. 412, 466, to support his argument. We attach no significance to the Senate explanation because the Conference report underlying section 2035(d) as finally enacted states, "[the] conference agreement follows the House bill." H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 511. The Conference report does not say that it only follows the House bill "in general." If the Conference report had been phrased thusly, we might be able to infer that the conferees intended to incorporate some portion of the Senate version. Rather, the Conference report gives a brief explanation of the House bill; notes that the Senate amendment proposed to continue the 3-year rule, only changing the date at which the value is determined for estate tax purposes; and then proceeds to follow the House bill without alluding to any provision in the Senate version.[9] H. Rept. 97-215 (Conf.), *supra*, 1981-2 C.B. at 511.

Respondent also cites the House report, the pertinent part of which states that:

> In general, the bill provides that section 2035(a) will not be applicable to the estates of decedents dying after December 31, 1981. Thus, gifts made within three years of death will not be included in the decedent's gross estate, and the post-gift appreciation will not be subject to transfer taxes. * * *
>
> The committee bill contains exceptions which continue the application of section 2035(a) to (1) *gifts of life insurance* and (2) interests in property otherwise included in the value of the gross estate pursuant to section 2036, 2037, 2038, 2041, or 2042 (or those which would have been included under any of such sections if the interest had been retained by the decedent).
>
> [H. Rept. 97-201 (1981), 1981-2 C.B. 352, 390. Emphasis supplied.]

The House report specifies two instances which would continue to be subject to the 3-year rule. One instance is the

---

[9] The Senate version of the proposed sec. 2035(d) concentrated on the duplication of effort required to value property both for the gift tax at the date of gift and again for the estate tax at the date of death, and it would have included in the gross estate the value of the gift as of the date of the gift within the 3 years prior to death. The Senate report focused on limiting the appreciation in value includable in an estate pursuant to the 3-year rule, rather than on the applicability or nonapplicability of sec. 2035(a) to life insurance specifically.

exception which is now section 2035(d)(2); the other exception is for life insurance. The exception for life insurance, however, was never enacted by Congress. In fact, the life insurance exception was not even included in the earlier Senate or House versions of the Code provision. In addition, the specific reference to life insurance in the House report was not repeated in the Conference report. In discussing the 3-year rule and its general negation by the new provision, the Conference report only states that, "the House bill continues to apply present law to gifts of certain types of property covered by sections 2036, 2037, 2038, 2041, and 2042." 1981-2 C.B. at 511.

Congress could have placed in the Code a provision whereby life insurance was excluded specifically from the general rule of section 2035(d)(1). It did not. Although we may resort in some circumstances to the legislative history to find Congress' intent, we are hesitant to rely on inconclusive legislative history to supply a provision *not enacted* by Congress. *United States v. American College of Physicians*, 475 U.S. 834, 846 (1986). There is no language in the Code regarding the specific applicability of section 2035(d) to life insurance except, as discussed above, for the general incorporation of section 2042 by reference. Therefore, we follow the plain meaning of the statute and find that there is no basis for treating life insurance policies differently per se from other property for purposes of section 2035(d).

Thus, in order to determine whether section 2035(d)(2) applies, we must determine whether the decedent ever possessed any interest under the terms of section 2042, which, as noted earlier, is the only cited section in section 2035(d)(2) that potentially applies to this case.

### Section 2042

Respondent has argued his case based solely upon the applicability of section 2035, not upon section 2042.[10]

---

[10]Respondent's position likely is due to the fact that the law appears clear regarding sec. 2042. Courts have consistently held that with the enactment of the Internal Revenue Code of 1954, Congress abolished payment of premiums as a factor in determining the taxability of life insurance proceeds under sec. 2042. See, e.g., *First National Bank of Oregon v. United States*, 488 F.2d 575, 578 (9th Cir. 1973); *Estate of Clay v. Commissioner*, 86 T.C. 1266, 1273 (1986); *Estate of Kurihara v. Commissioner*, 82 T.C. 51, 54 (1984).

Nevertheless, we must consider how section 2042 applies to the instant case because of the incorporation by reference of that provision into section 2035(d)(2).

Includability of life insurance proceeds under section 2042 depends upon the decedent's retention of incidents of ownership of the policy. *Estate of Coleman v. Commissioner*, 52 T.C. 921, 922 (1969). The case closest to the instant case on the facts is *Estate of Carlstrom v. Commissioner*, 76 T.C. 142 (1981). In *Carlstrom* the decedent owned by attribution 71 percent of the stock of a corporation that paid all the premiums on a life insurance policy on the decedent's life. Under State law, the decedent's wife was the owner of the policy at all times from the time of the original application for the policy. Even though she never exercised any rights under the policy, only she had the power to exercise such rights, the corporation did not. On that basis, this Court held that the corporation, and consequently the decedent, held no incident of ownership over the portion of the policy proceeds paid to the wife as beneficiary. 76 T.C. at 149. Similarly, in the instant case we also must look to the relevant State law to determine whether the decedent had any rights that might be incidents of ownership taxable under section 2042. See *Burnet v. Harmel*, 287 U.S. 103, 110 (1932) (State law creates legal interests and Federal law determines how they should be taxed).

The face of the policy declares that "this policy is issued as an Oklahoma contract and its terms shall be construed in accordance with the laws of Oklahoma." In Oklahoma it is well settled that where no express right to change the beneficiary exists in a policy, the insured is without power by deed of assignment or will or any other act of his to transfer to any person the beneficial interest in the policy. *Brown v. Home Life Insurance Co. of New York*, 3 F.2d 661, 662 (E.D. Okla. 1925). A valid assignment of the policy cannot be made, except as provided in the policy itself. *City National Bank of Lawton v. Lewis*, 73 Okla. 329, 176 P. 237, 239 (1918). The policy on the decedent's life specifically states that "only the owner will be entitled to the rights granted under this policy." The parties have stipulated that Jeanne Leder was the owner of the policy from the time of application for the policy until the policy was transferred to

the trust; at no time did the decedent have any contractual rights in the policy or any express powers exercisable under the policy.

In addition, insureds such as the decedent have no implicit power of disposition over a life insurance policy that, like the policy on the decedent here, is for the benefit of the insured's spouse or children. See Okla. Stat. Ann. tit. 36, sec. 3631 (West 1976). The Oklahoma Supreme Court has interpreted the predecessor to this statutory provision and held that the insured does not have "any interest [in such a policy] of which he can avail himself; nor upon his death have his personal representatives or his creditors any interest in the proceeds of such insurance contracts." *Johnson v. Roberts*, 124 Okla. 68, 254 P. 88, 90 (1926), citing *Central National Bank of Washington City v. Hume*, 128 U.S. 195 (1888).

Finally, the payment of premiums by an insured[11] does not give him any interest in the insurance policy under Oklahoma law. *Clark v. Clark*, 460 P.2d 936, 941 (Okla. 1969); *Johnson v. Roberts, supra.*

Thus, under Oklahoma law the decedent never possessed any contractual rights under the policy, any power to assign the policy, any express or implied power to change the beneficiary of the policy, or any power to make an effective pledge of the policy to any creditors. In short, he never possessed any of the incidents of ownership in the policy, regardless of his payment of premiums on the policy.

Because the decedent never possessed any of the incidents of ownership in the policy under State law, the proceeds from the policy are not, and never could have been included in the gross estate pursuant to section 2042. Thus, we hold that the exception in section 2035(d)(2) is inapplicable to the proceeds from the policy and that under section 2035(d)(1) the proceeds from the insurance policy are not includable in the gross estate.[12]

---

[11]We assume arguendo that by virtue of decedent's wholly owned corporation paying the policy premiums, the decedent has paid the premiums.

[12]We reemphasize that our decision does not reach the issue of the includability of the policy proceeds under sec. 2035(a) because sec. 2035(d)(1) applies and precludes any consideration of the 3-year rule. Thus, we need not discuss the "beamed transfer" theory enunciated in *Bel v. United States*, 452 F.2d 683 (5th Cir. 1971), and applied in the line of cases discussed in *Estate of Kurihara v. Commissioner*, 82 T.C. 51 (1984).

Accordingly, and to reflect concessions by the parties,

*Decision will be entered under Rule 155.*