ESTATE OF EDDIE L. HEADRICK, DECEASED, CLEVELAND BANK & TRUST COMPANY AND CHARLES L. ALMOND, EXECUTORS, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21659-86.          Filed August 7, 1989.

*Robert L. McMurray*, for the petitioners.
*Edsel Ford Holman, Jr.*, for the respondent.

NIMS, *Chief Judge:* Respondent determined a deficiency in petitioners' Federal estate tax liability of $192,881.15. The issue for decision is whether the proceeds of a life insurance policy purchased within 3 years of the decedent's death by a trust established by the decedent are properly includable in the decedent's gross estate under section 2035(a). (All section references are to sections of the Internal Revenue Code or the Estate Tax Regulations, as the case may be, in effect at decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure.) Resolution of this issue requires us to determine whether the decedent directly or indirectly possessed incidents of ownership over the life insurance policy during his lifetime. Secs. 2035(d)(2), 2042, and 2035(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners, Cleveland Bank & Trust Co. (CBT or the bank) and Charles L. Almond, at all relevant times have been the duly qualified and acting coexecutors of the estate of Eddie L. Headrick (decedent) under Letters Testamentary granted on June 22, 1982, by the Chancery Court of Bradley County, Tennessee.

Decedent, whose estate is the subject of this dispute, received his law degree from the University of Tennessee and his masters degree in tax law from New York University. Thereafter, he worked as a tax attorney in Cleveland, Tennessee. As part of his personal estate planning, the decedent, then 30 years of age, skillfully drafted an irrevocable trust agreement (trust agreement) of which decedent was grantor. The trust agreement designated decedent's wife and children as primary beneficiaries, conferred on the trustee by reference to Tennessee statutes most of the fiduciary powers recognized in that State, specifically permitted the trustee to accept additional contributions of property, reserved to decedent the right to remove any trustee at will and appoint a successor bank trustee, granted trust beneficiaries a limited power to withdraw trust property within 30 days of the contribution of such property and authorized the trustee to hold life insurance policies as trust principal. Regarding the power of the trustee to hold life insurance as a trust investment, the trust agreement specifically provided:

2.3 *Life Insurance as Trust Principal:* The trustee may accept the contribution of a life insurance policy on my life or on a beneficiary or on a person in whom I or a beneficiary have an insurable interest as Trust Principal. Likewise, the trustee may purchase insurance on my life, or on a beneficiary or on a person in whom there is an insurable interest, and hold each such policy as Trust Principal.

2.4 *Payment of Premiums:* The trustee may pay the premium on each policy of insurance held as Trust Principal from either Trust Principal or income, and such payment is an authorized expenditure. However, if the trustee does not have sufficient funds with which to pay a premium, it may:

(i) borrow money to pay the premium;

(ii) use such part of the cash surrender value of a policy (including a policy other than the one on which the premium is due) as is necessary to pay the premium; or

(iii) refuse to pay the premium and either convert the policy to a paid up policy or retain full coverage for an extended definite term or, if term insurance, permit the policy to lapse.

The decision of the trustee on which course of action to take is binding upon each beneficiary.

2.5 *Ownership of Insurance:* The trustee must own each policy of insurance purchased by, or contributed to, it. The trustee alone shall exercise each incident of ownership over each such policy.

Prior to executing the trust agreement, decedent met with life insurance agent William Turner to price life insurance policies. One of the policies discussed was offered by Massachusetts Mutual Life Insurance Co.

Decedent desired CBT to act as trustee of an intervivos trust to be established in accordance with the terms of the trust agreement. On December 18, 1979, decedent went to CBT to discuss establishing a trust. At the time of the meeting, CBT was "between trust officers." Decedent met with James C. Brewer (Brewer), the president of CBT, who up to that time had had no experience in the trust and estates field and was unfamiliar with the procedures of opening trusts. Decedent and Brewer generally discussed the trust for about 30 minutes. From the discussion, Brewer believed decedent intended the trust to function as an "insurance trust for [decedent's] family." The decedent did not, however, condition the establishment of the trust on CBT's commitment to acquire life insurance with the funds contributed to corpus. During the meeting, the irrevocable trust agreement of Eddie L. Headrick was executed by decedent as trustor and CBT as trustee. Brewer signed the trust agreement on behalf of CBT with the intention that the bank be bound by the terms of the executed trust agreement. CBT's trust department retained the executed trust agreement.

Schedule A of the executed trust agreement indicated that decedent irrevocably assigned $5,900 to CBT contemporaneously with the execution of trust. On December 18, 1979, the date the trust was established, Lucille Bonderud Headrick, wife of decedent, executed on behalf of herself and her minor children a fully informed waiver of the beneficiaries' right to withdraw any portion of her husband's $5,900 contribution to trust principal.

On December 19, 1979, CBT deposited decedent's $5,900 contribution in account No. 14738-411, a savings account opened in the name of Cleveland Bank & Trust Co., Trustee for the irrevocable trust of the beneficiaries under the trust of Eddie L. Headrick.

On December 19, 1979, Brewer, president of trustee CBT, executed part 1 of Massachusetts Mutual Life Insurance Co. application No. 160029 (application) for the purpose of obtaining a $375,000 insurance policy on the life of the decedent. The application stated that the policy owner would be Cleveland Bank & Trust Co. of Cleveland, Tennessee, Trustee u/a Eddie Lynn Headrick dated December 18, 1979, their successors in trust or assigns. Similarly, the application designated Cleveland Bank & Trust Co. of Cleveland, Tennessee, Trustee u/a Eddie Lynn Headrick dated December 18, 1979, their successors in trust or assigns as beneficiary. Decedent signed part 1 of the application as the insured.

CBT elected on the application to remit policy premiums by bank draft on a monthly basis. The application stated that "the first premium on the insurance now applied for [had] been paid in exchange for a fully completed Conditional Receipt." This first premium payment in the amount of $435.76 was remitted by a check made payable to the order of Massachusetts Mutual Life, dated December 20, 1979, and drawn on account No. 012-43180-7-05 by CBT Trustee for Eddie Headrick. The check was signed by Beth C. Woodard, ATO, CBT's acting trust officer. Checking account No. 012-43180-7-05 was opened in the name of CBT Co., Trustee for the irrevocable trust of the beneficiaries under the trust of Eddie L. Headrick on December 18, 1979.

On December 20, 1979, the day after CBT executed part 1 of the application, decedent submitted to the medical examination required in part 2 of the application, an examination performed by Marvin R. Batchelor, M.D.

CBT's application for insurance on the life of decedent was approved. On January 8, 1980, Massachusetts Mutual Life Insurance Co. issued policy No. 6-154-721 (policy), a $375,000 convertible whole life policy, to Cleveland Bank & Trust Co., as trustee, or the then acting trustee under the trust agreement dated December 18, 1979. Beginning on

December 20, 1979, and continuing until decedent's death, CBT transferred $435.76 each month from the trust's savings account to the trust's checking account, and as trustee paid Massachusetts Mutual Life the required monthly premiums. On December 30, 1980, decedent made a second contribution to the trust corpus of $5,500. On December 22, 1981, decedent made a third and final contribution of $2,000. No beneficiary elected to withdraw any portion of decedent's second or third contributions. The total contributions of $13,400 covered all premium payments made by the trust.

Part 3 of the policy issued to CBT described the rights of the owner as follows:

While the Insured is living, the Owner may exercise all rights given by this policy or allowed by us. These rights include assigning this policy, changing Beneficiaries, changing ownership, enjoying all policy benefits and exercising all policy options.

No ownership rights were conferred by the policy on the decedent. Likewise, no ownership rights in the policy were indirectly acquired by the decedent via a reserved power in the trust agreement. On the contrary, as discussed above, the agreement articulated that "the trustee alone shall exercise each incident of ownership over each [life insurance] policy."

Approximately 3 months after the trust was established, decedent joined CBT's board of directors and as a director became a member and chairman of CBT's trust committee. One of the trust committee's responsibilities was to review and discuss new trust accounts and the investments in those trusts. The trust agreement was first reviewed by the bank's trust committee on April 30, 1980. Thereafter, the trust was reviewed every 3 or 4 months as part of the bank's routine trust administration procedure. CBT's trust department was regularly audited by the FDIC and Tennessee bank auditors. Neither the trust committee nor the bank auditors determined that CBT improperly administered the trust in question.

The decedent, age 33, tragically died in an automobile accident on June 19, 1982, a date which was within 3 years of the trust's purchase of the life insurance policy. Decedent was survived by his wife and three minor daughters.

Upon decedent's death, Massachusetts Mutual Life Insurance Co. paid $378,701.93 in death benefits to the trustee as owner of the policy. The life insurance proceeds were not included in decedent's gross estate on the estate tax return filed by the executors of his estate. Respondent determined in the statutory notice of deficiency that:

The proceeds of Massachusetts Mutual Life Insurance Company policy No. 6-154-721, transferred to Cleveland Bank & Trust Company as trustee, constitute a transfer within the meaning of section 2035(a) of the Internal Revenue Code, and is therefore includable in the decedent's taxable estate. Since no amount was included on the estate tax return, the taxable estate is increased $378,701.93.

## OPINION

The issue before the Court is whether the proceeds of a life insurance policy purchased by a trust within 3 years of the insured grantor's death must be included in the trustor's gross estate under section 2035(a). [1] Simply stated, petitioners contend that section 2035(a), as amended by section 424(a) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-35, 95 Stat. 317, does not apply to the insurance proceeds because the decedent never possessed any incident of ownership in the policy within the meaning of section 2042. Sec. 2035(d).[2]

---

[1] Sec. 2035(a) provides:

SEC. 2035(a). INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b) [the provisions of which are not here relevant], the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

[2] Sec. 2035(d) provides:

SEC. 2035(d). DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

(2) EXCEPTIONS FOR CERTAIN TRANSFERS.—Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.

(3) 3-YEAR RULE RETAINED FOR CERTAIN PURPOSES— Paragraph (1) shall not apply for purposes of—
  (A) section 303(b) (relating to distributions in redemption of stock to pay death taxes),
  (B) section 2032A (relating to special valuation of certain farm, etc., real property), and
  (C) subchapter C of chapter 64 (relating to lien for taxes).

(4) COORDINATION OF 3-YEAR RULE WITH SECTION 6166(A)(1).—An estate shall be treated as meeting the 35-percent of adjusted gross estate requirement of section 6166(a)(1) only if the estate meets such requirement both with and without the application of paragraph (1).

Respondent, on the other hand, while conceding at trial that "In this particular case the matter was structured so that the incidents of ownership were not legally or technically held by the decedent," contends that decedent's dominance over the trust arrangement indicates that the trustee was substantively acting as decedent's agent in acquiring insurance on decedent's life. (We perceive no reason to question the appropriateness of respondent's concession.) Respondent reasons that decedent thereby acquired a transferable interest in the policy and the section 2042 incident of ownership requirement of section 2035(d)(2) is therefore satisfied.

We think the result in this case is controlled by our decision in *Estate of Leder v. Commissioner*, 89 T.C. 235 (1987), on appeal (10th Cir., Jan. 11, 1988). Briefly stated, the facts in *Estate of Leder* were as follows: a wife, within 3 years before her husband's death, purchased a life insurance policy on his life and signed the original application as owner. The husband's wholly-owned corporation paid all of the premiums on the policy directly to the insurance company.

In the case before us, a husband created an irrevocable trust with a bank as trustee, naming his wife and the couple's three minor children as beneficiaries. As permitted by the trust agreement, the bank, as trustee, purchased an insurance policy on the husband's life and paid the periodic premiums out of trust corpus donated by the husband.

In *Estate of Leder v. Commissioner, supra,* we held that the proceeds from the policy in that case were not includable in the gross estate of the insured where the insured did not possess at the time of his death, or at any time within the 3 years preceding his death, any of the incidents of ownership in the policy because (1) the conditions of section 2042 were never met; (2) the section 2035(d)(2) exception to section 2035(d)(1) is not applicable because the proceeds of the policy were not includable under section 2042 (or any of the other sections cited in section 2035(d)(2)); and (3) section 2035(d)(1) overrides section 2035(a). We think this holding applies here.

We construe respondent's concession, quoted above, to mean that the decedent, Eddie L. Headrick, did not retain,

under the provisions of the trust agreement created by him, any incidents of ownership in the life insurance policy acquired by the bank as trustee. Consequently, our inquiry is limited solely to the question of whether, under section 2042, Eddie Headrick ever owned the policy acquired by the trustee.

The facts surrounding the creation of the trust and the acquisition of the insurance policy by the trustee are not seriously disputed, although the inferences to be drawn from these facts are, of course, disputed. These facts are fully detailed in our findings of fact and need not be repeated here.

The gravamen of respondent's grievance is the charge that Eddie Headrick indirectly paid the insurance premiums. However, under the terms of the trust agreement the bank, as trustee, was permitted but was not required to buy an insurance policy on Eddie Headrick's life and pay the periodic premiums out of the trust corpus contributed by Eddie Headrick or the income therefrom. We do not think this creates a sufficient nexus to support a finding that Eddie Headrick himself paid the life insurance premiums. The record as a whole supports a finding that CBT did not act as Headrick's agent in acquiring the policy.

But, in any event, Congress long ago changed the test for including life insurance proceeds in the gross estate from a tracing of premiums paid to an evaluation of whether the decedent retained incidents of ownership in the policy. In S. Rept. 1622 to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 472 (1954), it is said that "[sec. 2042] revises existing law so that payment of premiums is no longer a factor in determining the taxability under this section of insurance proceeds."[3] Today, some 35 years after

---

[3]Sec. 2042 provides:

SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) RECEIVABLE BY THE EXECUTOR —To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before

the enactment of the 1954 Code, section 2042 remains unchanged from its 1954 version (except for the substitution of "Secretary" for "Secretary or his delegate"). Furthermore, courts have consistently held that with the enactment of the 1954 Code, Congress abolished payment of premiums as a factor in determining the taxability of life insurance proceeds under section 2042. In more modern times, we have continued to recognize that the premium payment test is "now abandoned" under section 2042. See, e.g., *Estate of Clay v. Commissioner,* 86 T.C. 1266, 1273 (1986).

In *Estate of Kurihara v. Commissioner,* 82 T.C. 51 (1984), the decedent-insured was the creator of a trust under an agreement which contained the words "The Grantor, the initiator of a policy of insurance on his life * * * hereby assigns to the Trustees all of his right, title, and interest in and to such policy of insurance * * * ." 82 T.C. at 62 (concurring opinion of J. Whitaker). From these words it would be difficult not to conclude, as we did in *Kurihara,* that the decedent, Kurihara, initially owned the policy. Decedent having died 3 months thereafter, the policy was unquestionably includable in his gross estate under sections 2035(d)(2) and 2042.

In discussing the events surrounding the acquisition of the insurance policy in *Kurihara,* we drew attention to the fact that the decedent-insured wrote a check to one of the trustees for the exact amount of the first premium, which the trustee then endorsed over to the insurance company. *Kurihara* should not, however, be read to suggest that payment of premiums has now become a talisman for includability of insurance proceeds under section 2042.

In *Estate of Leder v. Commissioner, supra,* we examined the law of Oklahoma to determine whether under the law of that State the mere fact that an individual is an insured

the death of the decedent. As used in this paragraph, the term "reversionary interest" includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and acturarial principles, pursuant to regulations prescribed by the Secretary. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate.

under a policy gives him or her a beneficial interest in the policy, even though someone else is shown as the owner of the policy on the insurance application. Our examination of Oklahoma law satisfied us that the answer to that question would be in the negative. We reached a similar conclusion under the law of Arizona in *Estate of Chapman v. Commissioner,* T.C. Memo. 1989-105. In this case, we have similarly examined the law of Tennessee, where the policy in question was issued, to determine whether a different result would be reached under the law of that State, and have satisfied ourselves that no different result would obtain. See, e.g., *Gray v. Aetna Life Ins. Co.,* 178 Tenn. 88, 156 S.W.2d 391 (1941); *Werthan v. McCabe,* 164 Tenn. 611, 51 S.W.2d 840 (1932).

Respondent asks us to apply an agency or "beamed transfer" theory to impute to Eddie Headrick a transfer of the life insurance policy acquired by the trust. In support of his position, respondent cites *Bel v. United States,* 452 F.2d 683 (5th Cir. 1971); *Detroit Bank & Trust Co. v. United States,* 467 F.2d 964 (6th Cir. 1972); and *Estate of Kurihara v. Commissioner, supra;* see also *Hope v. United States,* 691 F.2d 786 (5th Cir. 1982); and *Estate of Clay v. Commissioner,* 86 T.C. 1266 (1986). However, all of these cases were decided under various versions of section 2035 prior to its amendment by section 424(a) of ERTA. As we have already pointed out, in *Estate of Leder* we construed section 2035(d) as requiring us to first analyze the life insurance transaction under section 2042, so as to ascertain the existence or nonexistence of any incident of ownership. In *Estate of Leder,* we concluded that the beamed transfer approach was not germane to the section 2042 determination, and we apply the same rationale here.

In summary, we conclude that the decedent, Eddie L. Headrick, never possessed any incidents of ownership in the policy on his life under section 2042, and consequently that the proceeds therefrom are not includable in his gross estate under sections 2035(d)(1) and (2) and therefore are not includable under section 2035(a).

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.
CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, WHALEN, and COLVIN, *JJ.,* agree with this opinion.