ESTATE OF FRANK MARTIN PERRY, SR., DECEASED, MICHAEL C. PERRY, WHIT S. PERRY, AND ROBERT S. PERRY, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Perry v. Commissioner
Docket No. 4132-88
United States Tax Court
T.C. Memo 1990-123; 1990 Tax Ct. Memo LEXIS 123; 59 T.C.M. (CCH) 65; T.C.M. (RIA) 90123; March 8, 1990
Hugh C. Montgomery, Jr., David P. Webb, and Charles L. Brocato, for the petitioner. J. Craig Young and Helen C. T. Smith, for the respondent. COHEN
*187 MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $ 320,957 in the Federal estate tax of the estate of Frank Martin Perry, Sr., deceased, Michael C. Perry, Whit S. Perry, and Robert S. Perry, co-executors. After concessions, the sole issue for decision is whether proceeds totaling $ 600,000 from life insurance policies purchased within 3 years of decedent's death are includable in decedent's gross estate pursuant to section 2035(a). The parties have agreed that the issue in this case is the same as the issue in , affd. , and , on appeal (6th Cir., Jan. 19, 1990). Unless otherwise indicated, all section *125 references are to the Internal Revenue Code, as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. After trial, the parties submitted a Stipulation of Joint Proposed Findings of Fact. Thus the material facts are not disputed. Petitioner is the Estate of Frank Martin Perry, Sr. Petitioner *188 is represented by Michael C. Perry, Whit S. Perry, and Robert S. Perry, co-executors of the estate and the sons of decedent, Frank Martin Perry, Sr. The co-executors resided in Tunica, Mississippi, at the time the petition was filed. Decedent died on March 19, 1984, from gunshot wounds sustained in a hunting accident. At the time of his death, decedent was a resident of Tunica, Mississippi. A number of insurance policies on decedent's life were in effect at the time of his death. The proceeds of all but two of these policies were included in the gross estate on decedent's Federal estate tax return. The two insurance policies excluded from the return, which were purchased within 3 years of decedent's death, were as follows: Date
Insurer/
Policy Owners/
Amount of
Acquired
Policy No.
Beneficiaries
Proceeds
5-04-83
Lloyd's, London
Michael, Whit,
$ 400,000
#L-26502
& Robert Perry
6-08-83
Integon Life
Michael, Whit,
$ 200,000
#848082
& Robert Perry
Total
$ 600,000
*126 On April 16, 1983, decedent signed an application form for $ 400,000 of life insurance from Underwriters at Lloyd's, London (Lloyd's). Decedent signed this application as Applicant (Person to be Insured). Decedent's three sons, Michael C. Perry, Whit S. Perry, and Robert S. Perry, signed the application as the proposed policy owners. Lloyd's policy #L-26502 was issued on May 4, 1983. Under the terms of the policy and Mississippi law, decedent's sons were the policy owners at all times from the time of the issuance of the policy. Decedent paid all of the premiums on Lloyd's policy #L-26502. The annual premium on this policy was $ 512. Decedent paid the initial annual premium on or about April 27, 1983, by a check drawn on his personal checking account, account #03-362-16, at the Planters Bank of Tunica, Mississippi. Decedent died before the second annual premium on this policy became due. On May 4, 1983, decedent signed an application for $ 250,000 of life insurance from Integon Life Insurance Corporation (Integon). Decedent signed this application as Proposed Insured. Decedent's three sons signed the application as Applicant or Owner if not Proposed Insured. The application *127 designated decedent's sons as co-owners of $ 200,000 of the insurance and decedent as the owner of the remaining $ 50,000. As both applicant and proposed insured, decedent also signed a medical questionnaire filed in connection with the application for life insurance from Integon. In lieu of issuing a single $ 250,000 life insurance policy, Integon issued two separate policies. One of these policies was Integon policy #848082 in the amount of $ 200,000. The other Integon policy, in the amount of $ 50,000, is not in dispute. Integon policy #848082 was issued on June 8, 1983. Under the terms of the policy and Mississippi law, decedent's sons were the policy owners at all times from the time of the issuance of the policy. Decedent paid all of the premiums on this policy. The initial premium was paid by a check in the amount of $ 140 drawn on checking account #03-362-16 at the Planters Bank. Thereafter, the premiums of $ 127.28 per month were paid by preauthorized withdrawals from decedent's personal checking account, account #021-585-6, at the Tunica County Bank, Tunica, Mississippi. The final monthly premium was paid on March 12, 1984, 1 week before decedent's death. Decedent's *128 payments of the premiums on Lloyd's policy #L-26502 and Integon policy #848082 were not loans to decedent's sons, the beneficiaries. Upon decedent's death, the proceeds of Lloyd's policy #L-26502 in the amount of $ 400,000 and Integon policy #848082 in the amount of $ 200,000 (plus accrued interest of $ 1,767.15) were paid in lump sums to decedent's sons as beneficiaries. Respondent determined that the proceeds of these two insurance policies in the total amount of $ 600,000 were includable in decedent's gross estate. During the pendency of this case, the Court filed its opinions in the cases of ; and . In addition, the Court of Appeals for the Tenth Circuit affirmed our opinion in , affd. . Respondent has acknowledged that the legal issues in those cases and the issue in this case are virtually identical. Respondent does not contend that the instant case is distinguishable from Estate of Headrick or Estate of Leder. Respondent, however, *129 maintains that those cases were wrongly decided and asks that we reconsider our refusal to apply the "beamed transfer" theory of . *189 Section 2035
Section 2035(a) generally requires that the gross estate of a decedent include the value of any property in which the decedent had an interest or had transferred within 3 years of death (the 3-year inclusionary rule). Section 2035(b) excepts bona fide sales for adequate and full consideration and gifts for which gift tax returns need not be filed (except any transfer with respect to a life insurance policy). Section 2035(d), which applies to decedents dying after 1981, was added by the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 424, 95 Stat. 172, 317. Because decedent herein died in 1984, section 2035(d) applies to his estate. Section 2035(d)(1) provides that the general rule of section 2035(a) shall not apply to the estates of decedents dying after December 31, 1981, except in cases of those transfers enumerated in section 2035(d)(2). Section 2035(d)(2) excepts transfers of an interest in property that is included in the value of *130 the gross estate under section 2042 (or various other sections not applicable here) or that would have been included under any of those sections "if such interest had been retained by the decedent." Thus, in order to determine whether section 2035(d)(2) applies, we must determine whether decedent possessed any interest under the terms of section 2042. Section 2042
Section 2042 provides that the gross estate includes (1) the proceeds of insurance on decedent's life receivable by or for the benefit of the estate, and (2) the proceeds of insurance on decedent's life receivable by other beneficiaries if decedent possessed at his death any "incidents of ownership" in that insurance policy. Sec. 2042; sec. 20.2042-1(b) and (c), Estate Tax Regs. The term "incidents of ownership" refers to the right of the insured or his estate to the economic benefits of the policy. Sec. 20.2042-1(c)(2), Estate Tax Regs. Incidents of ownership listed in the regulations include the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the *131 policy. Sec. 20.2042-1(c)(2), Estate Tax Regs. We must also look to state law to determine whether decedent had any rights that might be incidents of ownership taxable under section 2042. ; . In Estate of Leder, we held that the proceeds from an insurance policy were not includable in the insured's gross estate where the insured did not possess at the time of his death, or at any time within the 3 years preceding his death, any of the incidents of ownership in the policy. Specifically, we held that section 2035(d)(1) overrides section 2035(a). Because the proceeds of the policy were not includable under section 2042, we held that the section 2035(d)(2) exception to section 2035(d)(1) was not applicable. Similarly, in Estate of Headrick, we held that the proceeds from an insurance policy were not includable in the insured's gross estate because the insured never possessed incidents of ownership in the policy within the meaning of section 2042. Although the decedent contributed cash annually to an irrevocable inter vivos trust in amounts *132 sufficient to meet the trust's cumulative monthly premium obligations, we held that "the premium payment test is 'now abandoned' under section 2042." . Under section 2035(a), a "'transfer' is not limited to the passing of property directly from the donor to the transferee, but encompasses a donation 'procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another.'" . In Estate of Leder, respondent asked us to construe the term "transfer" for purposes of section 2035(d) to include any transfer whether direct or indirect. Similarly, in Estate of Headrick, respondent asked us to apply a beamed transfer theory to impute to the insured a transfer of the life insurance policy acquired by the trust. In the instant case, respondent asks that we reconsider our refusal to apply the Bel beamed transfer theory of section 2035(a). In both Estate of Leder and Estate of Headrick, we rejected respondent's arguments that we should incorporate into section 2042 the constructive transfer doctrine. In view of respondent's acknowledgment that this *133 case cannot be distinguished from Estate of Leder or Estate of Headrick, we decline to apply the beamed transfer theory to the facts of this case. The parties have stipulated that, under the terms of the policies and Mississippi law, decedent's sons were the policy owners at all times from the time of the issuance of the two policies in question. The parties have also stipulated that decedent paid all of the premiums on the policies in issue. Under section 2042, however, decedent's payment of premiums is irrelevant in determining whether he retained any incidents of ownership in the policy proceeds. , affg. ; . Under the section 2042 definition of "incidents of ownership," decedent never held any ownership, economic, or other contractual rights in the policies. Decedent's sons were the legal and equitable owners of the policies. On these facts, we hold that the proceeds of the insurance policies *190 are not includable in decedent's gross estate under section 2042. To reflect the foregoing *134 and concessions by the parties, Decision will be entered under Rule 155.