ESTATE OF Frank Martin PERRY, Sr., Deceased, Michael C. Perry, Whit S. Perry and Robert S. Perry, Co–Executors, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 90–4509

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 22, 1991.

---

See also 931 F.2d 1044.

Gary R. Allen, Chief, John A. Dudeck, Jr., Robert S. Pomerance, Shirley D. Peterson, Asst. Atty. Gen., Abraham N.M. Shashy, Jr., Chief Counsel, Washington, D.C., for respondent-appellant.

Hugh Cameron Montgomery, Jr., Charles L. Brocato, J. Lee Woodruff, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for petitioners-appellees.

Before JOHNSON, SMITH and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Respondent–Appellant, Commissioner of Internal Revenue (Commissioner) appeals from an adverse ruling by the United States Tax Court which held that proceeds of insurance on the life of Frank Martin Perry, Sr. (Decedent), paid directly to his grown sons as owners and beneficiaries of two insurance policies, were properly excludable from the estate of Decedent for federal estate tax purposes, even though Decedent had signed the application for the insurance as proposed insured and had paid all premiums thereon. Because of the modifications wrought by the Economic Recovery Tax Act of 1981 ("ERTA"), Pub.L. No. 97–34, 95 Stat. 172, Sec. 424, including, inter alia, new Section 2035(d) of the Internal Revenue Code of 1954 (the Code), we agree with the Tax Court and affirm.

I.

Decedent died on March 19, 1984, at the age of 56, as a result of gunshot wounds sustained in a hunting accident. A number of insurance policies on his life were in effect at the time of his death. The proceeds of all but two of those policies were included in the gross estate on Decedent's Federal Estate Tax Return. Two insurance policies excluded from the return were purchased within three years of Decedent's death. One policy was issued by Lloyd's of London in the face amount of $400,000.00 and the other was issued by Integon Life Insurance Corporation in the face amount of $200,000.

Decedent had applied for the Lloyd's policy by signing an application form on April 16, 1983, less than one year before his death. Decedent signed that application as Applicant (person to be insured). Decedent's three sons, co-appellees herein, signed the application as the proposed policy owners. That policy was issued on May 4, 1983. It provided accident insurance so benefits would be paid only if the insured died or lost a limb as a result of an accident. Under the terms of the policy, Decedent's sons were designated as the policy owners and beneficiaries from the time of the issuance of the policy. Decedent paid the only premium that fell due on the Lloyd's policy, being the initial annual premium of $512 paid on or about April 27, 1983, by a check drawn on Decedent's personal checking account. His death occurred before the second annual premium of $512 was due.

. Decedent had applied for the Integon policy by signing an application form on May 4, 1983, less than one year before his death. Decedent signed that application as Proposed Insured. Decedent's sons signed

the application as Applicant or Owner if not Proposed Insured. The Integon policy was for one-year term insurance of $200,000, renewable annually to age 95. The application designated Decedent's sons as co-owners. As both applicant and proposed insured, Decedent signed a medical questionnaire in order to obtain the Integon policy, which was issued on June 8, 1983. Under the terms of the Integon policy, Decedent's sons were designated as policy owners and beneficiaries from the time of the issuance of the policy. Decedent paid all of the premiums on the Integon policy, consisting of an initial premium paid by check in the amount of $140 drawn on the Decedent's personal checking account. Subsequent monthly premiums of $127.28 were paid by pre-authorized withdrawals from Decedent's personal checking account. The final monthly premium was paid on March 12, 1984, one week before Decedent's death.

Following Decedent's death, the proceeds of both policies were paid in lump sums to Decedent's sons as beneficiaries.

## II.

The Estate of Frank Martin Perry, Deceased, Michael C. Perry, Whit S. Perry, and Robert S. Perry, co-executors, (the Estate), filed a petition in the United States Tax Court for a redetermination of a deficiency in Federal estate tax of $320,957 determined by the Commissioner. Following a trial, the Tax Court filed its opinion on March 8, 1990, and entered its decision in favor of the Estate on June 13, 1990. The Commissioner filed a timely notice of appeal on July 2, 1990.

## III.

Prior to 1981, Section 2035(a) of the Code provided generally that the value of a decedent's gross estate "shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of decedent's death." In ERTA, Congress carried forward Section 2035(a) but added new Section 2035(d) to the Code, limiting the application of the three-year rule of Section 2035(a) with respect to the estates of decedents dying after December 31, 1981. Section 2035(d)(1) provides that, in general, the three-year rule of Section 2035(a) no longer applies. However, Section 2035(d)(2), captioned "Exceptions for Certain Transfers," states that Section 2035(d)(1) itself "shall not apply to a transfer of an interest in property which is included in the value of the gross estate under Sections 2036, 2037, 2038 or 2042 of the Code or would have been included under any such sections if such interest had been retained by the decedent." [1] By virtue of Section 2035(d)(2), therefore, the rule of Section 2035(a), requiring that transfers within three years of death be brought back into the gross estate, is continued for the transfers described in Section 2035(d)(2). Because the decedent in the present case died after 1981, Section 2035, as amended by ERTA, applies to his estate. Thus, includability of the insurance proceeds under the three-year rule of Section 2035(a) depends on whether he made a transfer of the type described in Section 2035(d)(2) with respect to insurance policies.

The Tax Court held that the proceeds were not includible in Decedent's gross estate for estate tax purposes under Section 2035 as amended by ERTA. The Tax Court followed its prior decisions in *Leder v. Commissioner,* 89 T.C. 235 (1987), *aff'd,* 893 F.2d 237 (10th Cir.1989), and *Estate of Headrick v. Commissioner,* 93 T.C. 171 (1989), *aff'd,* 918 F.2d 1263 (6th Cir.1990). In those cases, the Tax Court reasoned that the cross-reference to Section 2042 in Section 2035(d)(2) means that the inclusionary rule of Section 2035 no longer applies *unless* a decedent possessed incidents of own-

---

**1.** Of the sections enumerated in Section 2035(d)(2), the one of immediate relevance to this case is Section 2042, under which the proceeds of a policy of insurance on a decedent's life are included in his gross estate when (1) the proceeds are payable to the executor, or (2) if the proceeds are payable to a beneficiary other than the executor, the decedent "possessed at his death any of the incidents of ownership" in the policy.

ership in the insurance policy. The Courts of Appeal for the Tenth and Sixth Circuits, respectively, affirmed the Tax Court's reasoning as well as its holdings.

Because in the instant case the Decedent never possessed any incidents of ownership in the policies (rather, the policies and all incidents of ownership were owned from their inception by his sons) the Tax Court concluded that Section 2035 as amended by ERTA does not require that the proceeds from the policies be included in the gross estate of Decedent. Given its interpretation of ERTA's amendment to Section 2035, the Tax Court declined to apply the "beamed transfer" theory of *Bel v. United States*, 452 F.2d 683 (5th Cir.1971), *cert. denied*, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972) which had included *constructive* transfers of life insurance in the gross estates of transferors under the pre-ERTA version of Section 2035.

This case, like *Leder* and *Headrick* before it, is based primarily in the plain wording of the statute, supported by the clear intention of Congress to do away with the last vestiges of the premium payment test for inclusion of life insurance in gross estates of insureds. Any slight differences between the facts of the instant case and those of *Leder* and *Headrick* are inconsequential. The government has not, and could not, argue distinctions based on factual variations.

Under the circumstances it would be redundant for us to reiterate the constant jurisprudence that has now been developed by the Tax Court and our colleagues of the Tenth and Sixth Circuits. Rather, we adopt the reasoning contained in those opinions and in the Tax Court's opinion in the instant case, agreeing entirely with the analysis on which such holdings are based. *See also Estate of Perry v. Commissioner*, 59 T.C.M. 65 (1990), and *Estate of Chapman v. Commissioner*, 56 T.C.M. 1451 (1989).

Because, however, the seminal pre-ERTA case in this area, *Bel v. United States*, was

a decision of this circuit, we are constrained to comment on it briefly. The Commissioner rests his entire case on *Bel*'s constructive transfer doctrine. Simply stated, that doctrine is that a " 'transfer' [2] is not limited to the passing of property directly from the donor to the transferee, but encompasses a donation 'procured through expenditures by the decedent with the purpose, effectuated at his death, of having it pass to another.' " *Bel*, 452 F.2d at 691 (citing *Chase Nat'l. Bank v. United States*, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405 (1929)).

The constructive transfer in *Bel* resulted from the decedent's purchase of a life insurance policy on himself, his payment of the premiums out of community funds, and his designation of his children as the owners and beneficiaries of the policy. In *Bel* we held that the decedent's actions amounted to a "transfer" within the meaning of pre-ERTA Section 2035 because the decedent "beamed" the policy proceeds to his children by paying the policy premiums and creating in the children the contractual rights to the insurance benefits. *Bel*, 452 F.2d at 691. Under the facts of *Bel* we found the presence of a "transfer" even though under Section 2042 the decedent never actually possessed incidents of ownership in the policy.

A panel of this court will not overrule a decision of a prior panel; we do that only by a decision of this court sitting en banc. It is axiomatic, however, that subsequent action by Congress can have the effect of totally or partially overruling such a prior decision. It may be that some aspects of *Bel* remain viable; that issue is not before us. But the aspects of *Bel* that are before us now—aspects which before ERTA would require inclusion of the proceeds of the Lloyd's and Integon policies in the Decedent's gross estate for federal estate tax purposes—are no longer viable. Since ERTA, the test mandated by Congress as a prerequisite to inclusion of life insurance proceeds under Section 2035(d)(2) is the *in-*

---

**2.** The term "transfer" has special significance because the privilege of transferring property is subject to federal estate/gift taxes. *Chase Nat'l.*

*Bank v. United States*, 278 U.S. 327, 333–34, 49 S.Ct. 126, 127, 73 L.Ed. 405 (1929).

*cidents of ownership* test. The Commissioner's reliance on the constructive transfer doctrine of *Bel* is misplaced. Even if we were to assume, arguendo, that the Decedent constructively transferred the policies or their proceeds by "beaming" them to his sons, there exists no additional fiction to compound the fiction of constructive transfer in order to ascribe to the Decedent any incidents of ownership of the subject insurance policies.

In his brief to this court the Commissioner states "[t]he decisions below, in *Leder* and in *Headrick* are erroneous." The Commissioner must now add to his list of "erroneous" cases not merely the Tax Court decisions in this case, in *Leder*, and *Headrick*, but the appellate decisions affirming them in the Tenth and Sixth Circuits and now the Fifth as well. We suggest that the Commissioner's arguments based on policy and on logic (seldom if ever a consideration in federal tax statutes) are more properly addressed to Congress whose clear words and expressed intent support the decisions—now six in number—on point. The weight of these decisions and ours today causes this court to speculate that the Commissioner's position on this issue may no longer be "substantially justified," thereby resulting in attorneys' fees obligations to taxpayers under § 7430 of the code.

For the reasons more specifically set forth in the opinions of the Tenth Circuit in *Leder* and the Sixth Circuit in *Headrick*, the decision of the Tax Court in this case is AFFIRMED.