The **DETROIT BANK & TRUST COM-PANY**, Executor of the Estate of Fred W. Ritter, Deceased, Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

No. 71–1790.

United States Court of Appeals,
Sixth Circuit.

Sept. 1, 1972.

---

Michael L. Paup, Washington, D. C., for appellant; Loring W. Post, Gilbert E. Andrews, Meyer Rothwacks, Attys., Tax Div., Dept. of Justice, Washington D. C., Ralph B. Guy, Jr., U. S. Atty., John H. Hausner, Asst. U. S. Atty., Detroit, Mich., on brief.

James F. Kennedy, Jr., Toledo, Ohio, for appellee; Gerald P. Moran, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, Kurt G. Kersten, Flat Rock, Mich., on brief.

Before EDWARDS and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This appeal concerns taxation of the estate of Fred W. Ritter. On April 9, 1964, being then in apparent good health, he entered into a trust agreement with The Detroit Bank and Trust Company as trustee, by which he transferred $9,600 to a trust to acquire $100,000 of insurance on his life, with the beneficiaries of the insurance to be his children. The trust was irreovcable and nominally beyond his control, but it provided for him to continue to make contributions to the trust for the payment of life insurance premiums, and its terms confined the trustees to expending the funds solely for the described purpose. Ritter died about six months later on October 6, 1964.

For purposes of this appeal the parties have stipulated that the money paid to the trust shall be presumed to have been given in contemplation of death, under Section 2035 of the Internal Revenue Code of 1954, 26 U.S.C. § 2035 (1954). The dispute, however, concerns whether the value, for purposes of estate taxation, should be determined by the value of the payment made to the trust or by the value of the insurance proceeds actually paid to the trustee on the event of Ritter's death?

The District Judge heard this case on stipulated facts and on plaintiff's motion for summary judgment. Following an opinion in the United States District Court for the Eastern District of Michigan, Gorman v. United States, 288 F. Supp. 225 (E.D.Mich.1968), he held that plaintiff's motion for summary judgment be granted so as to effect taxation on decedent's estate only to the extent of the $9,600 transferred to the irrevocable trust.

The government relies for reversal of this judgment primarily upon Section 2035 of the Internal Revenue Code of 1954, plus the related regulation:

§ 2035. Transactions in contemplation of death

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an ade-

quate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) Application of general rule.—If the decedent within a period of 3 years ending with the date of his death (except in a case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Aug. 16, 1954, c. 736, 68A Stat. 381; Oct. 16, 1962, Pub.L. 87–834, § 18(a)(2)(C), 76 Stat. 1052. 26 U.S.C. § 2035(a), (b) (1954), *as amended.*

(e) *Valuation.* The value of an interest in transferred property included in a decedent's gross estate under this section is the value of the interest as of the applicable valuation date. In this connection, see sections 2031, 2032 and the regulations thereunder. However, if the transferee has made improvements or additions to the property, any resulting enhancement in the value of the property is not considered in ascertaining the value of the gross estate. Similarly, neither income received subsequent to the transfer nor property purchased with such income is considered. 26 C.F.R. § 20.235–1(e) (1972).

Both sides also argue the meaning and applicability of Section 2042 of the Internal Revenue Code of 1954:

§ 2042. Proceeds of life insurance

The value of the gross estate shall include the value of all property—

(1) Receivable by the executor. —To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * * 26 U. S.C. § 2042(1), (2) (1954).

This case again presents the age-old argument in tax cases of form versus substance. Appellee executor claims that decedent never owned the insurance policy and, hence, never transferred it. The executor also claims that the only transfer was the payment by decedent of $9,600 to the trustee and that $9,600 is the greatest sum which possibly can be subject to tax under § 2035.

The government asks us to look through form to substance. It asserts that decedent transferred "insurance protection" as surely as if he had bought the policy and then assigned it to the trustee. The government concedes that decedent did not retain any "incidents of ownership," within the meaning of § 2042, but asks us to hold that "the trustee was in substance and reality acting as the decedent's agent in purchasing the policy."

The District Judge relied upon several cases dealing with the same issue: Mercantile Trust Co. v. United States, 312 F.Supp. 108 (E.D.Mo.1970); Estate of Inez Coleman, 52 T.C. 99 (1969); Gorman v. United States, 288 F.Supp. 225 (E.D.Mich.1968). He held:

Here, it is undisputed that the decedent never had any interest in the Travelers life insurance policy but, instead, had transferred to an irrevocable trust the sum of $9,600.00 to pay the initial premium on such a policy.

At the time the Trustee acquired this life insurance policy, with the $9,552.00 paid out of the trust corpus, it acquired all interests in that policy. Thus, in line with the reasoning and holdings of the above cited decisions, we find that the proceeds of the Travelers life insurance policy acquired by the Trustee with the funds supplied by decedent's transfer to the trust corpus are not includable in decedent's gross estate for federal tax purposes. Nevertheless, if decedent's transfer of the $9,600.00 to the trust corpus for acquisition of the life insurance policy was made in contemplation of death, then this sum is includable in decedent's estate under 26 U.S.C. § 2035, since this transfer was in the nature of a gift depleting decedent's estate within three years of death.

Subsequent to decision of this case, the government has issued a revenue ruling, Rev.Rul. 71–497, 1971 Int.Rev. Bull. No. 45, at 16, reiterating the government's position as stated above. Also subsequent to decision by the District Judge, the Fifth Circuit handed down a well reasoned opinion which arrives at the result sought herein by appellant United States of America. Bel v. United States, 452 F.2d 683 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972).

In *Bel* where the decedent employed a trust essentially identical to that at issue here, the Fifth Circuit held the tax applied. It said:

> We recognize, of course, that John Bel never formally possessed any of the incidents of ownership in the accidental death policy. As noted above, however, we conclude that section 2042 and the incidents-of-ownership test are totally irrelevant to a proper application of section 2035. We think our focus should be on the control beam of the word "transfer." The decedent, and the decedent alone, beamed the accidental death policy at his children, for by paying the premium he designated ownership of the policy and created in his children all of the

contractual rights to the insurance benefits. These were acts of transfer. The policy was not procured and ownership designated and designed by some goblin or hovering spirit. Without John Bel's conception, guidance and payment, the proceeds of the policy in the context of this case would not have been the children's. His actions were not ethereally, spiritually, or occultly actuated. Rather, they constituted worldly acts which by any other name come out as a "transfer." Had the decedent, within three years of his death, procured the policy in his own name and immediately thereafter assigned all ownership rights to his children, there is no question but that the policy proceeds would have been included in his estate. In our opinion the decedent's mode of execution is functionally indistinguishable. Therefore, we hold that the action of the decedent constituted a "transfer" of the accidental death policy within the meaning of section 2035, and that the district court erred in failing to include John Bel's community share of the proceed value of the policy in his gross estate. Bel v. United States, *supra*, 452 F.2d at 691–692.

The Fifth Circuit in *Bel* relied heavily upon language employed in Justice Stone's opinion for the Supreme Court in Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L. Ed. 405 (1929).

In the *Chase National Bank* case the Supreme Court upheld the constitutionality of the estate tax (§§ 401 and 402(f) of the Int.Rev.Act of 1921, 42 Stat. 277, 278). It concluded that the tax was on a decedent's privilege of transferring property at his death. It rejected the argument that the transfer to the beneficiaries of the proceeds of an insurance policy came not from the deceased but from the insurer. The Supreme Court said:

> Obviously, the word *"transfer"* in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to

refer only to the passing of particular items of property *directly from the decedent to the transferee. It must, we think at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another.* Section 402(c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value or proceeds at the time of death. Chase National Bank v. United States, *supra* at 337, 49 S.Ct. at 128. (Emphasis added.)

We recognize that the language above from *Chase* was employed to apply to facts which are not identical with those with which we deal here. The decedent in *Chase* transferred a policy which he owned. But the opinion does serve directly to establish the principle that the event taxed was the transfer of property *at death*. And the case illustrates the strong inclination of the Court to uphold the congressional intent as opposed to a technical interpretation.

This same inclination we find mirrored in the language of two other leading cases dealing with the federal estate tax provision for taxing gifts in contemplation of death. In Miliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L. Ed. 809 (1931), the Supreme Court upheld the constitutionality of taxation of gifts in contemplation of death by valuation as of the date of death. It said in part:

It is sufficient for present purposes that such gifts are motivated by the same considerations as lead to testamentary dispositions of property, and made as substitutes for such dispositions without awaiting death, when transfers by will or inheritance become effective. Underlying the present statute is the policy of taxing

such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of, death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death. Milliken v. United States, *supra* at 23, 51 S.Ct. at 326.

And in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1931), the Court extended the meaning of gifts "in contemplation of death" well beyond the concept of gifts *causa mortis*. It said:

The statutory description embraces gifts *inter vivos*, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. *The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax.* Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809. United States v. Wells, *supra* at 116–117, 51 S.Ct. at 451. (Emphasis added.)

We believe that what this appeal presents is still another method of evading a portion of the federal estate tax. At oral argument counsel for appellee bank did not seriously dispute this characterization, but contended that the device employed made use of an existing loophole in the federal tax statutes and that his client should be allowed full benefit of that loophole until, when, as, and if Congress elected to close it.

■ We do not deny the force of this argument or dispute the proposition that the District Court arrived at a result which can easily be defended by techni-

cal construction of the statute. Yet it appears to us that the congressional purpose was clearly to sweep into the estate tax gifts of insurance made in contemplation of death and to value such gifts in terms of the transfer of the proceeds at death rather than at the purchase or premium cost.

█ If the dominant purpose of Section 2035 is "to reach substitutes for testamentary disposition and thus to prevent evasion of the estate tax" (United States v. Wells, *supra* at 117, 51 S.Ct. at 451), we feel justified in holding that the trustee in this case was an agent for purchase of the insurance and that the trust device was a "substitute for testamentary disposition."

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

McALLISTER, Senior Circuit Judge (dissenting).

I respectfully dissent from the opinion of the Court and am of the view that the judgment of the District Court should be affirmed for the reasons set forth in Judge Freeman's opinion.