**FIRST NATIONAL BANK OF OREGON,**
**Executor of the Estate of Fred M. Slade,**
**Deceased, Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 72-2994.

United States Court of Appeals,
Ninth Circuit.

Dec. 3, 1973.

Richard E. Alexander, Williams, Montague, Stark, Hiefield & Norville, Portland, Or., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., John M. Kirk, Trial Atty., Tax Div., Meyer Rothwacks, Atty., Loring W. Post and Michael L. Paup, Attys., U. S. Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant-appellee.

Before WRIGHT, CHOY and SNEED, Circuit Judges..

CHOY, Circuit Judge:

Appellant, First National Bank of Oregon, is the executor of the estate of Fred M. Slade, deceased. It seeks a refund of federal estate taxes paid as a result of the inclusion in the decedent's gross estate of the proceeds of two insurance policies which were denominated gifts in contemplation of death by the Internal Revenue Service.

In 1966 the decedent had his wife sign the applications for two twenty-year term insurance policies on his life. This was done at the urging of his insurance agent who explained that such a purchase could exempt the proceeds from federal estate taxation. The policies were issued to Mrs. Slade as owner and beneficiary, but all the premiums were paid by Mr. Slade. Within three years Mr. Slade died.

Section 2035 of the Internal Revenue Code provides that *transfers* of interests in property made for less than adequate consideration and within three years of death are presumptively made in contemplation of death and, consequently, are includable in a decedent's gross estate.[1] It is not disputed that the premiums were paid and the policies procured in contemplation of death. The sole issue on appeal is whether the property interest transferred was the proceeds of the policies, as the district court held, or only the premiums advanced by Mr. Slade, as appellant contends.

We agree with Detroit Bank and Trust Co. v. United States, 467 F.2d 964 (6th Cir. 1972), cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973), and Bel v. United States, 452 F. 2d 683 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972), that where life insurance policies are procured at the instance of the decedent within the presumptive period and where the premiums are paid by the deceased, the gross estate includes the proceeds of the policies.[2]

---

1. Int.Rev.Code of 1954 § 2035 provides:

   (a) *General rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

   (b) *Application of general rule.*—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in

   contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

2. Though the policies involved here were term life insurance policies, it would make no difference if whole life policies had been purchased within three years of death since in each case the right to the proceeds is created within the presumptive period. *See* Note, Insurance Policies Transferred in Contemplation of Death—The Premium Payment Test Revived?, 44 U.Colo.L.Rev. 633, 645 (1973).

   We note that two of the cases cited by appellant involve distinguishable factual situa-

Appellant argues that, since Mr. Slade never owned the policies, he could not have "transferred" them to Mrs. Slade. We cannot sanction such a technical reading of the statute. As the Supreme Court has said in a similar context,

> Obviously, the word "transfer" in the statute [§§ 401 and 402(f) of the Revenue Act of 1921, ch. 136, §§ 401, 402(f), 42 Stat. 277, 279 taxing the "transfer" of insurance proceeds at death], or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Sec. 402(c) taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure of the tax would be the cost and not the value of the proceeds at the time of death.

Chase National Bank v. United States, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405 (1929). There is only a formal difference between a decedent first buying a policy, then transferring it to the beneficiary, and the beneficiary purchasing the policy at the urging of the decedent and with the decedent's funds. *See* 82 Harv.L.Rev. 1765 (1969). No policy, except one of tax evasion, supports this formalistic distinction. We decline to adopt it.

Not only would appellant's interpretation of section 2035 be unduly technical, it would also undermine its statutory goal. The purpose of section 2035 "is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." United states v. Wells, 283 U.S. 102, 117, 51 S.Ct. 446, 451, 75 L.Ed. 867 (1931). An insured pays the premiums on a life insurance policy in order to leave the proceeds to his beneficiaries; thus where a policy is both procured at the behest of the decedent within the statutory period and where all the premiums are paid by the deceased in contemplation of death, the gift must necessarily be one of the property interest in the policy. *See* Rhodes, Contemplation of Death: The Problem of Life Insurance Proceeds, 24 Tax Lawyer 589, 591, 596 (1971). In short, what is intended with the purchase of a life insurance policy in circumstances like these is the passing of the proceeds at death. That is the equivalent of a testamentary disposition, and its taxation is precisely the object of section 2035.

Finally, acquiescing in appellant's interpretation would create an anomalous exception to section 2035 in the case of life insurance policies. The normal rule under section 2035 is that property transferred in contemplation of death is valued as of the decedent's death, not as

---

tions: First National Bank of Midland v. United States, 423 F.2d 1286 (5th Cir. 1970) and Estate of Inez G. Coleman, 52 T. C. 921 (1969). In both cases life insurance policies had been first obtained prior to the presumptive three year period of § 2035(b). The decedents, however, continued to pay the premiums during the three years previous to their deaths. The Commissioner of the Internal Revenue Service contended that a pro rata portion of the proceeds, according to the proportion of the premiums paid in the three year period, should be included in the decedents' gross estates. Both courts rejected this position. Because the policies were procured and some premiums paid prior to the three year period, these cases present very different issues on which we intimate no opinion. In any case, the Commissioner has acquiesced in those decisions, though continuing to assert that the proceeds are taxable when the policy is first procured, as in the instant case, within the statutory period. *See* Rev.Rul. 71–497, 1971–2 Cum.Bul. 329.

of the date the property was transferred. Treas.Reg. § 20.2035–1(e). For example, if in contemplation of death, a decedent transferred stock which ultimately appreciated in worth by the time of his death, the stock would be valued for estate tax purposes at its increased value. But taxing only the premiums paid on life insurance as gifts in contemplation of death would mean ignoring the increase in value the premiums purchased—namely, the value of the proceeds. *See* Estate of Inez G. Coleman, 52 T.C. 921, 927 (1969) (Raum, J., dissenting).[3]

Our holding does not, as appellant argues, impermissibly raises the old "premium payment" test "phoenix-like from the language" of section 2035. Estate of Inez G. Coleman, 52 T.C. at 923. That test was incorporated in section 811(g) of the 1939 Code [4] which specifically included a pro rata portion of the proceeds of life insurance policies in a decedent's gross estate where the deceased had paid, no matter when, some of the premiums. Congress eliminated this harsh rule in adopting section 2042 of the 1954 Code dictating that life insurance proceeds are includable in the gross estate when the insured possesses at his death "any of the incidents of ownership" of the policy. Int.Rev.Code of 1954, § 2042. Appellant argues that the adoption of section 2042 wholly put to rest the "premium payment" test, and that a holding employing it for the limited purpose of determining the value of a gift in contemplation of death contravenes that congressional intent.

However, the legislative history of section 2042 demonstrates that the test was eliminated only as a standard for the inclusion of insurance proceeds under that section. Both the House and Senate committee reports stated that section 2042 "revises existing law so that payment of premiums is no longer a factor in determining the taxability *under this section* of insurance proceeds." H.R.Rep.No.1337, 83d Cong., 2d Sess. A316 (1954), U.S.Code Cong. & Admin. News 1954, p. 4459; S.R.Rep.No.1622, 83d Cong., 2d Sess. 472 (1954) (emphasis added). Congress jettisoned the "premium payment" test under section 2042 because "no other property [was] subject to estate tax where the decedent initially purchased it and then long before his death gave away all rights to the property." H.R.Rep.No.1337, *supra* at 91. U.S.Code Cong. & Admin.News 1954, p. 4118. The purpose was to end discrimination against insurance as a form of property, not to affect the treatment of insurance proceeds—or indeed favor insurance over other types of property—under section 2035. *See* Rhodes, *supra* at 595–96.[5]

We therefore affirm the district court's interpretation of section 2035. However, the parties have agreed that appellant's attorney fees incurred in this action will be deductible from the gross estate. That will necessitate a partial refund of the taxes paid by the estate. Hence we remand for further proceedings relative to the deduction of the attorney fees.

Affirmed, but remanded for further proceedings.

---

3. In Estate of Inez G. Coleman, 52 T.C. 921, 923 (1969), the Tax Court seemed to adopt a "diversion" theory, under which the estate would be taxed only on what the decedent "parted with" during the three years prior to his death. This theory is, of course, inconsistent with the general rule under § 2035 that the value of property at the time of death is determinative for estate tax purposes.

4. Ch. 3, § 811(g), 53 Stat. 122 (Part 1) as amended by § 404(a) of the Revenue Act of 1942, ch. 619, § 404(a), 56 Stat. 944. *See*

generally A. Casner, Estate Planning, 322 (3d ed. 1961).

5. The only two cases which directly support appellant, Mercantile Trust Co. Nat. Ass'n v. United States, 312 F.Supp. 108 (E.D.Mo. 1970) and Gorman v. United States, 288 F. Supp. 225 (E.D.Mich.1968), relied to a substantial degree on what we believe is this erroneous view of the effect of § 2042. *See* Mercantile Trust Co. Nat. Ass'n v. United States, *supra* at 110; Gorman v. United States, *supra* at 226–228, 230.