ESTATE OF ROBERT W. HASS, NELLIE S. HASS, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hass v. Commissioner
Docket No. 11967-82.
United States Tax Court
T.C. Memo 1986-63; 1986 Tax Ct. Memo LEXIS 543; 51 T.C.M. (CCH) 453; T.C.M. (RIA) 86063; February 11, 1986. William J. Crowell, Jr., for the petitioner. A. Chris Zimmermann, for the respondent. WILLIAMS
MEMORANDUM OPINION WILLIAMS, Judge *: The Commissioner determined a deficiency of $31,664.31 in Federal estate tax. After concessions by the parties, the remaining issue before this Court is whether the purchase by decedent's wife of a policy insuring her husband's life that was paid for out of community property funds constitutes a transfer by decedent within the meaning of section 2035. [1]
*544 The parties have submitted this case with the facts fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Nellie S. Hass, Executrix of the Estate of Robert W. Hass, the petitioner in this case, was a legal resident of Carson City, Nevada at the time of the filing of this petition. Nellie is the surviving spouse of Robert W. Hass, who died at the age of 53 on July 6, 1978. The decedent had four children who survived him. The Federal tax return for the estate of the decedent was timely filed. The decedent and Nellie Hass entered into an Agreement and Declaration of Manner of Owning Property on November 15, 1969. The Agreement provides that: The purpose of this agreement is that the undersigned hereby declare that all of our property is community property * * * for the reason that in truth and in fact all of our property was acquired by us with community funds and is in truth and fact community property and each of us owns one-half of said community property in his or her individual right without any disturbance of the title thereto. This Agreement had not been rescinded at the time of decedent's death, and was referred to and affirmed in the *545 separate wills of both the decedent and Nellie Hass. At the time of his death there were three life insurance policies on the life of the decedent in addition to the policy in dispute in this case. The three policies were all community property, and their proceeds totalled $70,705.74. The policy in dispute in this case was a level 5-year term convertible and renewable life insurance policy issued by United Benefit Life Insurance Company (the United Policy) in the amount of $100,000. The application for the United policy was signed by the decedent as insured and by Nellie Hass as applicant. The United policy was issued on May 3, 1978. A Supplementary Provision attached to the United policy identifies Nellie Hass as having all ownership rights and interest in the policy. The provision states: It is understood and agreed by the Insured that the sole Owner of this policy is Nellie S. Hass, Wife of the Insured. Said Owner shall have all right and title to the insurance applied for as her separate property and may exercise every incident of ownership without the consent of the other person. Nellie Hass was both the owner and the primary beneficiary of the policy. The children *546 of the decedent were named as secondary beneficiaries. The first annual premium of $1,444.00 was paid by three separate checks, each drawn on the account of Bonanza Realty. This account was the community property of the decedent and Nellie Hass on which each was authorized to draw. The first such check was dated March 27, 1978 in the amount of $266.00, and was signed by the decedent. The two remaining checks were both signed by Nellie Hass and dated May 9, 1978, in the amounts of $1,105.00 and $73.00, respectively. [2]
The decedent died within three months of the issuance of the United Policy, and following his death Nellie Hass received the proceeds of the United policy in the amount of $101,772.39. Of this amount, $100,000.00 was for life insurance, $1,083.00 was unused premium, and $689.39 *547 was interest. The respondent seeks to include one-half of this sum, or $50,886.00, in the estate of the deceased. [3]
In this case, the United policy is the separate property of Nellie. Kern v. United States,491 F. 2d 436 (9th Cir. 1974). The Supplementary Provision of the insurance contract stipulates that Nellie Hass is the sole owner of the policy with "all right and title *548 to the insurance applied for as her separate property * * *." In signing this provision, the decedent established the United policy as the separate property of his wife under Nevada law. Rogger v. Rogger,96 Nev. 687, 615 P. 2d 250 (1980); Petition of Fuller,63 Nev. 26, 159 P. 2d 579 (1945). Respondent argues that though the United policy may be the separate property of Nellie Hass, the policy was created by use of community funds, which for Federal estate tax purposes should be viewed as effecting a transfer of the policy by the decedent. Since the transfer occurred within three years of his death, respondent argues that section 2035 requires the value of the interest transferred to be included in the decedent's gross estate. Petitioner contends that Nellie's use of the community funds to pay the premium was a lawful exercise under Nevada law within her own rights over the account. Consequently, petitioner argues there was no transfer from decedent for purposes of section 2035. While Nellie's use of community funds to pay the premium was indisputably lawful, that point misses the mark. Nellie purchased separate property with community funds. *549 The translation of community property into separate property involves a transfer by one spouse of his interest in those community funds to the other spouse. In this case, the decedent transferred his interest in the community funds to Nellie when the funds were used to pay the premium. Nellie's legal ability to use community funds to purchase separate property does not diminish the nature or the amount of the transfer. [4]
Furthermore, for Federal estate tax purposes, a husband's transfer of his funds to his wife for the purpose of purchasing life insurance on his life has been held to constitute a transfer of the policy itself. In First National Bank of Oregon v. United States,488 F. 2d 575 (9th Cir. 1973), the *550 decedent's spouse was the owner and beneficiary of two 20-year term life insurance policies, but all the premiums were paid within three years of decedent's death with funds of the decedent. The taxpayer argued that a transfer had not taken place since the decedent had never owned the policies. The court ruled that only a formal distinction existed between a situation in which the decedent purchases and then transfers the policies to his spouse, and one where the spouse purchases the policies with funds provided by the decedent. 488 F. 2d at 577. The court held that the proceeds of the policies were includible in the estate because payment of the premiums with decedent's funds constituted a transfer of the policies within the meaning of section 2035. In Estate of Kurihara v. Commissioner,82 T.C. 51 (1984), the decedent established an irrevocable trust for the benefit of his spouse and two children and transferred funds to the trust which were used to purchase a life insurance policy on the life of the decedent. The trustees of the trust were named as the beneficiaries of the policy. The decedent died within three months of the issuance of the policy. *551 In Kurihara, we articulated two questions that were determinative of whether section 2035 reached the proceeds of the policies insuring decedent's life: (1) did payment of the policy premium within the three-year period create the spouse's ownership rights in the policy; and, (2) did the decedent pay the premium? 82 T.C. at 60. Here, as in Kurihara, our answer to each question is affirmative, and we hold that the proceeds of the policies, in proportion to the decedent's interest in the community funds used to pay the initial premium, are includible in decedent's estate pursuant to section 2035. See also Detroit Bank and Trust Company v. United States,467 F. 2d 964 (6th Cir. 1972), cert. denied 410 U.S. 929 (1973). To reflect the exclusion of the interest income on the policy proceeds from the estate, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned to Judge Williams for decision and opinion. ↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death. Section 2035 provided in pertinent part: SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH. (a) Inclusion of Gifts Made by Decedent.--Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death. (b) Exceptions.--Subsection (a) shall not apply-- (1) to any bona fide sale for an adequate and full consideration in money or money's worth, and (2) to any gift to a donee made during a calendar year if the decedent was not required by section 6019 to file any gift tax return for such year with respect to gifts to such donee. Paragraph (2) shall not apply to any transfer with respect to a life insurance policy.↩
2. Though the Stipulation of Facts states this last check to be for the amount of $76.00, it is clear that this figure is a typographical error. The evidence, Exhibit 11-K, is a check drawn on the account of Bonanza Realty dated May 9, 1978 and signed by Nellie S. Hass for the amount of $73.00. The sum of the checks as recited above equals $1,444.00, the amount of the annual premium.↩
3. The respondent's deficiency notice shows an increase of only $15,532.00 to the insurance schedule of the estate tax return, rather than $50,886.00. This reduction is to compensate for an error in the original estate tax return which included the entire proceeds of the three life insurance policies in the decedent's gross estate. Since the policies were community property only one-half of the proceeds should have been included in the estate. Thus, only $35,353.00 should have been included in the insurance schedule, rather than $70,706.00. After accounting for this error, respondent calculates the remaining adjustment to be $15,532.00. In fact, the remaining adjustment should be $15,188.50 because the interest is not includible in the gross estate for Federal estate tax purposes.↩
4. Whether Nellie or her husband signed the check drawing on the community account to pay the premium is immaterial. Both had full signatory power over the account. The decedent had fully stated his desire and intent that the United policy be owned separately by Nellie, and it was separate property. When community funds were used to purchase that separate property, those funds were transferred to Nellie whether decedent or Nellie signed the check.↩