ESTATE OF Joseph LEDER, Deceased, Jeanne Leder, Executrix, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 88–1125.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1989.

John A. Dudeck, Jr. (William S. Rose, Jr., Asst. Atty. Gen. and Gary R. Allen and Robert S. Pomerance, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the briefs), Atty., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellant.

Steven P. Cole (Randall D. Mock, of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, a Professional Corp., Oklahoma City, Okl., with him on the brief), of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, a Professional Corporation, of Oklahoma City, Okl., for petitioners-appellees.

Before ANDERSON and TACHA, Circuit Judges, and WINDER, District Judge.*

TACHA, Circuit Judge.

The Commissioner of Internal Revenue ("Commissioner") appeals the decision of the United States Tax Court ("Tax Court") that the proceeds from an insurance policy are not includable in the insured's gross estate under section 2035(d) of the Internal Revenue Code, 26 U.S.C. § 2035(d), where the decedent never possessed any of the incidents of ownership in the policy under section 2042. We affirm.

## I.

The parties stipulated to the facts of this case. The decedent, Joseph Leder, died on May 31, 1983. At the time of his death, Joseph Leder was insured under a $1,000,000 policy issued by TransAmerica Occidental Life Insurance Company on January 28, 1981 ("the policy"). Jeanne Leder, the decedent's wife, signed the policy application as the owner and the decedent signed as the insured. The policy initially reflected that Jeanne Leder was the policy owner and sole beneficiary.

The premiums for the policy, $3,879.08 per month, were paid by preauthorized withdrawals from the account of Leader Enterprises, the decedent's wholly owned corporation. All of the policy premiums were paid less than three years before the decedent's death. Leader Enterprises treated the premium payments as loans made to the decedent. Neither Leader Enterprises nor the decedent received any consideration from Jeanne Leder in exchange for these premium payments.

On February 15, 1983, Jeanne Leder, as the owner of the policy, transferred the policy to herself as trustee of an inter vivos trust. The trust agreement provided that upon receipt of the trust corpus, the trustee would divide the trust into four equal shares for the benefit of Jeanne Leder and the Leders' three children. No further assignments of the policy proceeds or changes in the beneficiaries of the policy were made.

Upon the decedent's death the proceeds of the policy, $971,526.49, were distributed as provided for in the trust agreement. The proceeds were not included in the decedent's gross estate on the federal estate tax return filed for the decedent's estate.

The Commissioner determined that the proceeds of the policy were properly includable in the decedent's gross estate under section 2035 and sent Jeanne Leder, the executrix of Joseph Leder's estate, a notice of deficiency. The estate challenged the Commissioner's determination in the Tax Court.

The Tax Court held that the policy proceeds were not includable in the decedent's gross estate under section 2035. Section 2035 provides in relevant part:

> SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.
>
> (a) *Inclusion of Gifts Made by Decedent.*—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

---

* Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation.

(b) *Exceptions.*—Subsection (a) shall not apply—

. . . .

(2) to any gift to a donee made during a calendar year if the decedent was not required by section 6019 (other than by reason of section 6019(2)) to file any gift tax return for such year with respect to gifts to such donee. Paragraph (2) shall not apply to any transfer with respect to a life insurance policy.

. . . .

(d) *Decedents Dying After 1981.*—

(1) *In general.*—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

(2) *Exceptions for certain transfers.*—Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.

26 U.S.C. § 2035.

Section 2035(a) generally requires that the value of any property or interest transferred by the decedent within three years of death for less than full and adequate consideration be included in the decedent's gross estate (the "three year inclusionary rule"). The Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 424, 95 Stat. 172, 317 [hereinafter ERTA], added section 2035(d), which applies to the estates of decedents dying after 1981. Construing section 2035 as a whole, the Tax Court found that for decedents dying after 1981, subsection (d)(1) nullifies the three year inclusionary rule of subsection (a), except for those transfers described in subsection (d)(2). Section 2035(d)(2) specifically references transfers under section 2042, which provides in relevant part:

SEC. 2042. PROCEEDS OF LIFE INSURANCE.

The value of the gross estate shall include the value of all property—

(1) *Receivable by the executor.*—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) *Receivable by other beneficiaries.*—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent *with respect to which the decedent possessed at his death any of the incidents of ownership*, exercisable either alone or in conjunction with any other person. For purposes of the preceding sentence, the term "incident of ownership" includes a reversionary interest (whether arising by the express terms of the policy or other instrument or by operation of law) only if the value of such reversionary interest exceeded 5 percent of the value of the policy immediately before the death of the decedent. As used in this paragraph, the term "reversionary interest" includes a possibility that the policy, or the proceeds of the policy, may return to the decedent or his estate, or may be subject to a power of disposition by him.

26 U.S.C. § 2042 (emphasis added).

Critically, under section 2042 the decedent's *payment of premiums is irrelevant* in determining whether the decedent retained any "incidents of ownership" in the policy proceeds. *See First Nat'l Bank v. United States*, 488 F.2d 575, 578 (9th Cir. 1973); *Bel v. United States*, 452 F.2d 683, 689 (5th Cir.1971), *cert. denied*, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972); *Estate of Headrick v. Commissioner*, 93 T.C. 171, 178–79 (1989). Congress intended to eliminate the premium payment test used in the 1939 Code when it adopted section 2042. *See First Nat'l Bank*, 488 F.2d at 578. Both the House and Senate committee reports stated that section 2042 "revises existing law so that payment of premiums is no longer a factor in determining the taxability *under this section* of insurance proceeds." *Id.* (emphasis in *First Nat'l Bank*) (quoting H.R.Rep. No. 1337, 83d Cong., 2d Sess. A316, *reprinted in* 1954 U.S.Code Cong. & Admin.News

4017, 4459; citing S.Rep. No. 1622, 83d Cong., 2d Sess. 472 (1954)).

The Tax Court examined section 2042 and determined that the decedent never possessed any rights to the insurance policy that would constitute "incidents of ownership." Because the policy proceeds were not includable under section 2042, the Tax Court concluded that the section 2035(d)(2) exception did not apply, and thus under the general rule of section 2035(d)(1) the proceeds from the insurance policy were not includable in the decedent's gross estate. In so holding the Tax Court emphasized that it did not reach the issue of the includability of the policy proceeds under the "constructive transfer" caselaw doctrine developed under section 2035(a) because section 2035(d)(1) overrides section 2035(a).[1]

## II.

We review the Tax Court's decision "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482. Consequently, we review the Tax Court's determinations of law de novo. *See In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988). The proper application of section 2035 to the estate of a decedent dying after December 31, 1981, is a statutory construction question of first impression. The principal issue on appeal is whether the term "transfer" in section 2035(d)(2) includes so-called "constructive transfers" as described in *Bel*, 452 F.2d at 691–92, or if section 2035(d)(2)'s cross reference to section 2042 implicitly limits the term's scope. The Tax Court held that the subsection (d)(2) cross reference did limit "transfer." The Commissioner contends on appeal, however, that Congress did not intend subsections (d)(1) and (d)(2) to exclude "constructive transfers" from the decedent's gross estate for estate tax purposes.

The constructive transfer doctrine developed under section 2035(a) prior to the passage of the ERTA and the addition of subsection (d) to section 2035. Under section 2035(a), a " 'transfer' is not limited to the passing of property directly from the donor to the transferee, but encompasses a donation 'procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another,' " *Bel*, 452 F.2d at 691. The typical example of a constructive transfer is where the decedent purchases a life insurance policy on himself or herself, pays all the premiums, and designates his or her children or spouse as the owners and beneficiaries. In these situations courts construing section 2035(a) view the decedent's actions as acts of transfer, because the decedent "beamed" the policy proceeds to the children or spouse by paying the policy premiums and creating in the children or spouse all of the contractual rights to the insurance benefits. *Bel*, 452 F.2d at 691; *see also First Nat'l Bank*, 488 F.2d at 576–77; *Detroit Bank & Trust Co. v. United States*, 467 F.2d 964, 967–68 (6th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Estate of Kurihara v. Commissioner*, 82 T.C. 51, 60–61 (1984).

We decline the Commissioner's invitation to create a judicial gloss on the express language of section 2035(d) by incorporating into section 2035(d)(2) the *Bel* constructive transfer doctrine. Section 2035(d)(2) *expressly refers to section 2042*, a fact which, viewed in light of the *Bel* opinion, compels us to reject application of the constructive transfer doctrine to section 2035(d)(2).

In *Bel*, 452 F.2d 683, upon which the Commissioner relies heavily, the decedent purchased a life insurance policy on himself and paid the premiums out of community funds. The decedent designated his three children as owners and beneficiaries of the policy proceeds. The executors of the decedent's estate did not include on the estate tax return the policy proceeds in the decedent's gross estate, and the Commissioner assessed a deficiency. The estate argued

---

1. The Tax Court in two subsequent cases has continued to adhere to its interpretation that I.R.C. section 2035(d)(1) nullifies section 2035(a) except for the transfers referenced in section 2035(d)(2). *See Estate of Headrick v. Commissioner*, 93 T.C. 171 (1989); *Estate of Chapman v. Commissioner*, 56 T.C.M. (CCH) 1451 (1989).

that because Congress specifically rejected a premium payment test for determining whether insurance policy proceeds are included in the decedent's gross estate under section 2042, a premium payment test should not be used to determine a "transfer" includable in the decedent's gross estate under section 2035(a). *See Bel,* 452 F.2d at 688–690. The *Bel* court disagreed, finding that the scope of transfers includable in the decedent's gross estate under sections 2042 and 2035(a) were not equivalent:

In arguing that this court should affirm the lower court's ruling that no part of the insurance proceeds is includable in the decedent's gross estate, the taxpayers would have us apply a section of the Code dealing with lemons (section 2042), to one pertaining to oranges (section 2035[a]). Section 2042, which deals strictly with life insurance, provides, *inter alia,* that a decedent's gross estate shall include the value of the proceeds of life insurance policies on which the decedent possessed at his death any of the incidents of ownership. However, section 2035[a] provides that *all property* which is transferred in contemplation of death is includable in a decedent's gross estate. We do not think that [sections 2042 and 2035(a)] were designed or conceived to be read in *pari materia.* They came into being at different times, their respective targets were diverse, and we perceive no philosophical confluence to twin them.

452 F.2d at 690 (emphasis in original).

Like the taxpayer's argument in *Bel,* the Commissioner's interpretation of section 2035—that the constructive transfer doctrine of section 2035(a) applies to 2035(d), and specifically section 2035(d)(2)—would have us mixing lemons and oranges. Section 2035(d)(2) *specifically cross references* section 2042. The only inference we can draw from this express cross reference is that Congress, in enacting subsection (d), meant to construe sections 2035(d)(2) and 2042 in *pari materia.* "It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls."

*Edwards v. Valdez,* 789 F.2d 1477, 1481 (10th Cir.1986) (citations omitted). In *Bel* terms, section 2035(d)(2), like section 2042, is a lemon; section 2035(a) remains an orange. The fundamental rationale behind the *Bel* court's invocation of the constructive transfer doctrine—that section 2042 and its rejection of a premium payments test are not limitations on section 2035(a)—thus becomes inapplicable to section 2035(d)(2), which, as applied to the disputed insurance proceeds in this case, is by its very terms expressly limited to transfers under section 2042. To apply the constructive transfer doctrine in the manner requested by the Commissioner would be to resurrect under section 2042 the premium payment test "phoenix-like from the language of section 2035," *First Nat'l Bank,* 488 F.2d at 578, in contravention of the express language of section 2035(d)(2) and the undisputed intent of section 2042, *see* discussion of sections 2035(d) and 2042, *supra,* Part I at 4–6.

Having concluded that section 2035(d)(2) transfers are defined through the cross referenced sections, we turn to section 2042 to determine its application to the facts of this case. Section 2042 includes in the decedent's estate the proceeds of life insurance policies on the life of the decedent where the decedent at the time of his death possessed any of the incidents of ownership in the policies. Treasury Regulation section 20.2042–1(c) states that:

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

Treas.Reg. § 20.2042–1(c)(2) (as amended 1979).

Under the section 2042 definition of "incidents of ownership" the decedent Joseph

Leder never held any ownership, economic, or other contractual rights in the policy. Jeanne Leder was the owner of the policy from the time of application for the policy until the policy was transferred to the trust for the benefit of herself and the Leder's four children. The policy states that "the owner will be entitled to the rights granted by this policy," and that only "[t]he owner may change the beneficiary." Jeanne Leder, first in her own right and later as trustee, enjoyed the legal and shared the equitable rights granted under the policy with her three children. Nor did the decedent hold a reversionary interest in the policy proceeds. The policy states that "[i]f the owner ... dies before the Insured, the rights of the owner belong to the executor or administrator of the owner." Finally, the payment of the policy premiums by the decedent's wholly owned corporation does not render the policy proceeds includable in the decedent's gross estate, because payment of premiums is not an incident of ownership under section 2042. *See* discussion of section 2042, *supra*, Part I at 5–6.

On these facts we find that the policy proceeds are not includable in the decedent's estate under section 2042. Because the decedent did not transfer an interest in the policy proceeds under section 2042, and none of the other exceptions listed in section 2035(d)(2) apply, we hold that the general rule of section 2035(d)(1) governs. Section 2035(d)(1) excludes the policy proceeds from the decedent's gross estate.

### III.

We hold that the constructive transfer doctrine is inapplicable to section 2035(d)(2) because of Congress's cross reference to section 2042. In addition, we determine that applying the constructive transfer doctrine to a transaction governed by section 2042 would contravene Congress's intent in enacting section 2042 by effectively resurrecting the premium payment test. The judgment of the Tax Court is AFFIRMED.