**ESTATE OF Eddie L. HEADRICK, Cleveland Bank and Trust Company and Charles L. Almond, Petitioners–Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

**No. 90–1150.**

United States Court of Appeals, Sixth Circuit.

Cause Argued Sept. 24, 1990.

Decided Nov. 19, 1990.

Robert Lee McMurray (argued), Bell, Painter, McMurray, Cleveland, Tenn., for petitioners-appellees.

Peter K. Scott, I.R.S., Gary R. Allen, Acting Chief, Robert S. Pomerance (argued), John A. Dudeck, Shirley D. Peterson, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellant.

Before MILBURN, BOGGS and SUHRHEINRICH, Circuit Judges.

MILBURN, Circuit Judge.

The Commissioner of Internal Revenue appeals the decision of the United States Tax Court holding that the proceeds from an insurance policy are not includable in the gross estate of the decedent, Eddie L. Headrick. For the reasons that follow, we affirm.

I.

Eddie L. Headrick was a tax attorney in Cleveland, Tennessee.[1] As part of his personal estate planning, Headrick drafted an irrevocable trust agreement naming himself as the settlor. The trust agreement designated Headrick's wife and their three minor daughters as primary beneficiaries, reserved to Headrick the right to remove any trustee at will and appoint a bank as successor trustee, granted the trust benefi-

---

**1.** The facts in this case are taken essentially verbatim from the opinion of the United States Tax Court.

ciaries a limited power to withdraw trust property within 30 days of the contribution of such property, and authorized, but did not require the trustee to invest in life insurance policies on Headrick or on the life of a beneficiary and to hold such policies as trust principal.

Headrick selected the Cleveland Bank and Trust Company ("CBT" or "the bank") to act as trustee of the irrevocable trust. On December 18, 1979, Headrick went to CBT and discussed establishing the trust with James C. Brewer, the bank president. Brewer testified that based on this discussion he believed that Headrick intended the trust to function as an "insurance trust for his family." However, Headrick did not condition the establishment of the trust on CBT's commitment to acquire life insurance with the funds contributed to the corpus. During the meeting, the trust agreement was executed by Headrick as trustor and CBT as trustee, and Headrick irrevocably assigned $5,900 to CBT. On the same date, Headrick's wife executed on behalf of herself and her minor children a waiver of the beneficiaries' right to withdraw any portion of the $5,900 contribution to the trust principal.

On December 19, 1979, Brewer completed Part I of an application from Massachusetts Mutual Life Insurance Company for the purpose of obtaining a $375,000 insurance policy on Headrick's life.[2] The application stated that the policy owner and the beneficiary would be CBT as trustee of Headrick's trust. Headrick signed the application as the insured.

On January 8, 1980, Massachusetts Mutual approved the application and issued a $375,000 convertible whole life policy to CBT as trustee under the December 18, 1979 trust agreement. The policy conferred no ownership rights on Headrick. Rather, the policy stated that while Headrick was living, CBT, as owner, could exercise all rights given by the policy, including assigning the policy, changing beneficiaries, changing ownership, and exercising all policy options. CBT paid Massachusetts

Mutual a monthly premium of $435.76. On December 30, 1980, Headrick made a second contribution to the trust corpus in the amount of $5,500, and on December 22, 1981, he made a final contribution of $2,000. No beneficiary elected to withdraw any portion of the second and third contributions. The total contributions of $13,400 covered all premium payments made by the trust.

Approximately three months after the trust was established, Headrick joined CBT's board of directors and became a member and chairman of the bank's trust committee. One responsibility of the trust committee was to review and discuss new trust accounts and the investments in those accounts. Headrick's trust agreement was first reviewed by the trust committee on April 30, 1980, and thereafter it was reviewed every three to four months as part of the bank's routine trust administration procedure.

On June 19, 1982, less than three years after execution of the trust agreement, Headrick died in an automobile accident. Upon his death, Massachusetts Mutual paid $378,701.93 in death benefits to CBT as the owner of the policy. The life insurance proceeds were not included in Headrick's gross estate on the estate tax return filed by the executors of his estate. On audit, the Internal Revenue Service (IRS) determined that payment of the proceeds to CBT as trustee constituted a transfer within the meaning of section 2035(a) of the Internal Revenue Code, and was therefore includable in Headrick's estate. The IRS assessed a deficiency in the amount of $98,043.13. The estate paid the deficiency and challenged this determination in the United States Tax Court.

In a unanimous reviewed decision, the Tax Court held that the proceeds were not includable in Headrick's gross estate. Following its decision in *Estate of Leder v. Commissioner*, 89 T.C. 235 (1987), *aff'd*, 893 F.2d 237 (10th Cir.1989), the Tax Court held that Headrick never possessed any "incidents of ownership" in the policy on

---

**2.** Prior to executing the trust agreement, Headrick met with an insurance agent to price life insurance policies, and one of the policies discussed was offered by Massachusetts Mutual.

his life under section 2042, and therefore the proceeds were not includable in his gross estate under sections 2035(d)(1) and (2). The court found that CBT did not act as Headrick's agent in acquiring the policy, and the court rejected applying the constructive transfer theory to the determination of ownership under section 2042. The court reasoned that the cases applying the constructive transfer theory were decided under versions of section 2035 prior to its amendment by the Economic Recovery Tax Act of 1981 ("ERTA"). This timely appeal followed.

The principal issue on appeal is whether the proceeds from the life insurance policy purchased by the trustee are includable in Headrick's gross estate.

## II.

A decision of the Tax Court is reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482. Because the issue on appeal is a conclusion of law, the Tax Court's decision will be reviewed *de novo*. *Walter v. Commissioner*, 753 F.2d 35, 38 (6th Cir. 1985).

The issue before us has been addressed by the Tenth Circuit in *Estate of Leder v. Commissioner*, 893 F.2d 237 (10th Cir. 1989). The Tax Court relied on *Leder* in rendering its decision in this case, and we find the Tenth Circuit's reasoning to be persuasive. Before discussing the *Leder* decision, a brief overview of the relevant provisions of the Internal Revenue Code (I.R.C.) is in order.

Section 2035 provides in relevant part:

(a) **Inclusion of gifts made by decedent.** —Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3–year period ending on the date of the decedent's death.

\* \* \* \* \* \*

(d) **Decedents dying after 1981.**—

(1) **In general.**—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

(2) **Exceptions for certain transfers.** —Paragraph (1) of this subsection ... shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section ... 2042 or would have been included under ... [section 2042] if such interest had been retained by the decedent.

26 U.S.C. § 2035. "Section 2035(a) generally requires that the value of any property or interest transferred by the decedent within three years of death for less than full and adequate consideration be included in the decedent's gross estate...." *Leder*, 893 F.2d at 239. Section 2035(d) was added by the Economic Recovery Tax Act of 1981 (ERTA), and it applies to the estates of decedents dying after 1981. *Id.* "[S]ubsection (d)(1) nullifies the three year inclusionary rule of subsection (a), except for those transfers described in subsection (d)(2)." *Id.*

Subsection (d)(2) specifically cross references section 2042, which provides in relevant part:

The value of the gross estate shall include the value of all property—

.    .    .    .    .

(2) **Receivable by other beneficiaries.** —To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

26 U.S.C. § 2042. "Section 2042 includes in the decedent's estate the proceeds of life insurance policies on the life of the decedent where the decedent at the time of his death possessed any of the incidents of ownership in the policies." *Leder*, 893 F.2d at 241.

In *Leder*, the Tenth Circuit framed the issue on appeal as "whether the term 'transfer' in section 2035(d)(2) includes so-

called 'constructive transfers' ... or if section 2035(d)(2)'s cross reference to section 2042 implicitly limits the term's scope." *Id.* at 240. "The constructive transfer doctrine developed under section 2035(a) prior to the passage of the ERTA and the addition of subsection (d) to section 2035." *Id.* "The typical example of a constructive transfer is where the decedent purchases a life insurance policy on himself or herself, pays all the premiums, and designates his or her children or spouse as the owners and beneficiaries." *Id.* Under section 2035(a), courts have construed such transactions as transfers "because the decedent 'beamed' the policy proceeds to the children or spouse by paying the policy premiums and creating in the children or spouse all of the contractual rights to the insurance benefits." *Id.; see Bel v. United States,* 452 F.2d 683 (5th Cir.1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118 (1972); *Detroit Bank & Trust Co. v. United States,* 467 F.2d 964 (6th Cir.1972), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973); *Estate of Kurihara v. Commissioner,* 82 T.C. 51 (1984).

In *Leder,* the Tenth Circuit declined to incorporate the constructive transfer doctrine into section 2035(d)(2). The court noted that "[s]ection 2035(d)(2) *specifically cross references* section 2042," and the court concluded that the only inference to be drawn "from this express cross reference is that Congress, in enacting subsection (d), meant to construe sections 2035(d)(2) and 2042 in *pari materia.*" *Leder,* 893 F.2d at 241 (emphasis in original).

As noted earlier, section 2042 includes life insurance proceeds in a decedent's estate if at the time of his death he possessed "any of the incidents of ownership" in the policy.[3] "Critically, under section 2042 the decedent's *payment of premiums is irrelevant* in determining whether the decedent retained any 'incidents of ownership' in the policy proceeds." *Id.* at 239 (emphasis in

original). The Tenth Circuit concluded that to apply the constructive transfer doctrine to section 2035(d)(2) "would be to resurrect under section 2042 the premium payment test 'phoenix-like from the language of section 2035,' in contravention of the express language of section 2035(d)(2) and the undisputed intent of section 2042." *Id.* at 241 (citations omitted).

The Tenth Circuit summarized its ruling in *Leder:*

> We hold that the constructive transfer doctrine is inapplicable to section 2035(d)(2) because of Congress's cross reference to section 2042. In addition, we determine that applying the constructive transfer doctrine to a transaction governed by section 2042 would contravene Congress's intent in enacting section 2042 by effectively resurrecting the premium payment test.

*Id.* at 242. Thus, the court examined the decedent's "incidents of ownership" in the policy and concluded that the policy proceeds were not includable in his estate under section 2042. "Because the decedent did not transfer an interest in the policy proceeds under section 2042," the exception listed in section 2035(d)(2) did not apply, and the general rule of section 2035(d)(1) operated to exclude the policy proceeds from the decedent's gross estate. *Id.*

The Commissioner's arguments in the present case are very similar, if not identical, to those advanced in *Leder.* The Commissioner argues that the term "transfer" in section 2035(d)(2) includes indirect or constructive transfers, and he asserts that the Tax Court erred by deciding that the constructive transfer doctrine no longer applies to section 2035 as amended by the ERTA. The Commissioner relies on pre-ERTA cases applying the constructive transfer doctrine, and he contends that the reasoning of those cases remains applicable to section 2035(d)(2). See *Bel,* 452 F.2d at 691; *Detroit Bank,* 467 F.2d at 969; *First*

---

**3.** The term "incidents of ownership" in section 2042 "has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the poli-

cy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." *Leder,* 893 F.2d at 241 (quoting Treas.Reg. § 20.2042–1(c)(2)).

*Nat'l v. United States*, 488 F.2d 575, 576 (9th Cir.1973). The Commission argues that Headrick made a "transfer" of ownership of the policy within the meaning of section 2035(d)(2) and the proceeds from the policy must be included in his gross estate under section 2035(a).

The Commissioner urges us to examine the substance of the transaction rather than its form, and he identifies certain factors indicating that CBT acted as Headrick's agent rather than as an independent trustee. For example, the Commissioner notes that Headrick drafted the trust, designated the beneficiaries, and selected an insurance policy for the trustee to purchase, which it did the day after the trust was established. Headrick also provided the money to purchase the policy and to pay the premiums. Moreover, the Commissioner asserts that Headrick exercised continuing supervision over the trust through his power to remove the trustee at will and through his position as chairman of CBT's trust committee.

The Commissioner argues that the Tenth Circuit's analysis in *Leder* is erroneous and should not be followed in this case. The Commissioner asserts that section 2035(d)(2)'s cross reference to section 2042 does not render the constructive transfer doctrine obsolete. The Commissioner contends that section 2042 is specifically addressed only to insurance policies owned by the decedent on the date of his death, and is not concerned, as is section 2035, with lifetime transfers of insurance policies. Thus, the Commissioner concludes that section 2035(d)(2) should not be read as coterminous with section 2042.

The Commissioner contends that his argument is supported by the language of section 2035(d)(2). He asserts, "It is apparent from the clause 'would have been included' that Section 2035(d)(2) applies to an insurance policy which a decedent does not own when he dies and which accordingly would not be included in his gross estate by Section 2042." Appellant's Brief at 45. The Commissioner maintains that section 2035(d)(2) reaches "transfers" of interests which "would have been included" in the

estate under section 2042 if the decedent had retained those interests until his death. The Commissioner concludes that Headrick made a transfer of an ownership interest in the insurance policy which falls within section 2035(d)(2) and requires that the proceeds from the policy be included in his gross estate.

We reject the Commissioner's arguments. A literal reading of the statutory language supports the Tax Court's conclusion that section 2035(d)(2) first requires analysis of the life insurance transaction under section 2042, so as to ascertain the existence of any "incidents of ownership." Section 2035(a) recovers for the gross estate the value of property transferred by the decedent within three years of his death. However, for decedents dying after 1981, subsection (d)(2) restricts the application of subsection (a) to only those interests in property which are included in the estate or would have been included in the estate under the enumerated sections, including section 2042. Under section 2042, the decedent must have possessed incidents of ownership in the insurance policy at the time of his death for the proceeds from the policy to be included in his estate. Therefore, if the incidents of ownership test is not satisfied, the proceeds cannot be included in the gross estate under section 2035(d)(2).

Like the Tenth Circuit, "[w]e decline the Commissioner's invitation to create a judicial gloss on the express language of section 2035(d) by incorporating into section 2035(d)(2) the Bel constructive transfer doctrine." *Leder*, 893 F.2d at 240. Likewise, our decision in *Detroit Bank*, a pre-ERTA case, is not applicable to section 2035(d)(2) which was created by the Economic Recovery Tax Act of 1981 (ERTA). We conclude that the cross-reference to section 2042 precludes application of the constructive transfer doctrine to section 2035(d)(2). "To apply the constructive transfer doctrine in the manner requested by the Commissioner would be to resurrect under section 2042 the premium payment test 'phoenix-like from the language of section 2035.'" *Id.* at 241. Application of the constructive transfer doctrine to section 2035(d)(2) would contravene the express language of

that subsection and the undisputed intent of section 2042. *Id.*

■ Accordingly, we will apply the "incidents of ownership" test of section 2042 to determine if the proceeds of the life insurance policy are includable in Headrick's gross estate pursuant to section 2035(d)(2). We find that Headrick never possessed any incidents of ownership in the policy. CBT, as trustee, was the owner of the policy from the time of application for the policy until the time the proceeds were paid to the trust. As owner of the policy, CBT exercised all rights given by the policy, including assigning the policy, changing beneficiaries, and changing ownership. The policy conferred no ownership rights on Headrick. The fact that Headrick made contributions to the trust corpus for payment of the policy premiums is irrelevant "because payment of premiums is not an incident of ownership under section 2042." *Leder*, 893 F.2d at 242.

Since Headrick did not possess any incidents of ownership in the policy, he did not transfer an interest in property which would have been included in the value of his gross estate under section 2042. Therefore, the policy proceeds are not includable under section 2035(d)(2), and the general rule of section 2035(d)(1) applies to exclude the proceeds from Headrick's gross estate.

### III.

Accordingly, for the foregoing reasons, the judgment of the Tax Court is AFFIRMED.